**Larry Neil COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0375-94.**

Court of Criminal Appeals of Texas, En Banc.

June 28, 1995.

Mark Stevens, Vincent D. Callahan (Brett Harrison, Pia Rebecca Lederman, Russell Sablatura, J. Charles Bunk, third year law students licensed to practice under the supervision of Mark Stevens), San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., Chris De-Martino, A.J. Dimaline, Barbara Hervey, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

BAIRD, Judge.

Appellant was convicted by a jury of theft over $20,000.00. Tex.Penal Code Ann. § 31.03. Appellant pled "true" to the enhancement allegation and the trial judge assessed punishment at ten years confinement and ordered restitution in the amount of $6,000.00. Tex.Penal Code Ann. § 12.33. The Court of Appeals affirmed. *Cook v. State*, No. 04-93-00111-CR (Tex.App.—San Antonio, January 5, 1994) (Not published). We granted appellant's petition for discretionary review to determine whether the charging instrument was so deficient as to not invest the trial court with jurisdiction. Tex.R.App.P. 200(c)(5). We will reverse.

**I.**

We set out the charging instrument below:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empaneled and sworn as such at the March term, A.D., 1991, of the 186th Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment, and on or about the

1ST day of June 1987, hereinafter referred to as defendant, with intent to deprive the owner, namely: ELIZABETH K. PRICE, of property, namely: LAWFUL CURRENCY OF THE UNITED STATES OF AMERICA said property, said property being other than real property which had A VALUE of Twenty Thousand Dollars ($20,000.00) or more, without the effective consent of the owner;

Before the commission of the offense alleged above, on the 24th day of June, A.D., 1977, in Cause no. CR 3-77-35, in the UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AT DALLAS, the Defendant was convicted of the felony of FRAUD IN OFFER OF SALE OF SECURITIES AND MAIL FRAUD.

[Signed by Grand Jury Foreperson]

On direct appeal, appellant contended his conviction was void because the charging instrument was constitutionally deficient because it omitted appellant's name and omitted the *actus reus* of the offense. The Court of Appeals, with one justice dissenting, affirmed. *Cook, supra.* Relying upon *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990), the Court held appellant waived the error by failing to object to the charging instrument prior to trial. *Cook,* slip op. pg. 3. Addressing appellant's constitutional argument, the court explained:

Only by the most hypertechnical of arguments can it be said that the instrument is not an "indictment." If appellant had been acquitted, no appellate court would hold that the state could retry him because the instrument was not an indictment and therefore the trial court never acquired jurisdiction. In what sense then can it be said, after a conviction, that the instrument was not an indictment and the trial court did not acquire jurisdiction? For jeopardy

purposes, it is plain that [appellant] has been convicted and punishment has been assessed for the offense of theft over $20,-000 from [complainant] on June 1, 1987. *Id.,* at 3–4.

We granted appellant's petition for discretionary review to determine whether a charging instrument which fails to charge "a person" still constitutes an indictment as contemplated by art. V, § 12(b).

## II.

### A.

■ The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses.[1] Tex. Const. art. I, § 10. *See also,* James C. Harrington, *Our Texas Bill of Rights,* 31 (Texas Civil Rights Project 1991). Art. I, § 10 provides in pertinent part:

**Rights of accused in criminal prosecutions**

In all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof ... and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary....

The *constitutional* requirement that felony offenses be prosecuted by indictment is firmly established. *See, King v. State,* 473 S.W.2d 43, 47–49 (Tex.Cr.App.1971) ("[T]he requirement that felonies be prosecuted by indictment has been followed in Texas since the outbreak of the revolution against Mexi-

co."); *Hollingsworth v. State,* 221 S.W. 978, 979 (Tex.Cr.App.1920); *overruled in part, King,* supra; *Kinley v. State,* 29 Tex.App. 532, 16 S.W. 339, 340 (1891); *and, Graham v. State,* 43 Tex. 550 (Tex.1875). *See also, Ex parte Preston,* 833 S.W.2d 515, 522 (Tex.Cr.App.1992) (Clinton, J., concurring); *and, Acosta v. State,* 650 S.W.2d 827, 830 (Tex.Cr.App.1983) (Onion, P.J., concurring).

■ An indictment serves two functions. First, it provides notice of the offense in order to allow a defendant to prepare a defense. *Saathoff v. State,* 891 S.W.2d 264, 266 (Tex.Cr.App.1994); *Evans v. State,* 623 S.W.2d 924, 925 (Tex.Cr.App.1981); *Benoit v. State,* 561 S.W.2d 810, 813 (Tex.Cr.App.1977); *Wilson v. State,* 520 S.W.2d 377, 379 (Tex.Cr.App.1975); *and, Zweig v. State,* 74 Tex.Crim. 306, 171 S.W. 747, 753 (App.1914) (Op on reh'g). *See also,* 1 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis,* 39 (Texas Legislative Counsel 1977). Second, an indictment serves a jurisdictional function. *Labelle v. State,* 720 S.W.2d 101, 106 (Tex.Cr.App.1986); *Thompson v. State,* 697 S.W.2d 413, 415 (Tex.Cr.App.1985); *and, Drumm v. State,* 560 S.W.2d 944, 946–947 (Tex.Cr.App.1977). The filing of an indictment is essential to vest the trial court with jurisdiction over a felony offense. *See, King,* 473 S.W.2d at 47–49; *Ex parte Krarup,* 422 S.W.2d 173, 174 (Tex.Cr.App.1967); *Melancon v. State,* 367 S.W.2d 690, 692 (Tex.Cr.App.1963); *Kennedy v. State,* 161 Tex.Crim. 303, 276 S.W.2d 291, 294 (App.1954) (Op. on reh'g); *Hollingsworth,* 221 S.W. at 979; *Turpin v. State,* 86 Tex. Crim. 96, 215 S.W. 455, 456 (App.1919); *Turman v. State,* 81 Tex.Crim. 320, 196 S.W. 181 (App.1917); *and, Lott v. State,* 18 Tex.App.

1. Almost twenty-five years ago we considered whether the requirement of an indictment was jurisdictional or a right that could be waived. *King v. State,* 473 S.W.2d 43, 47 (Tex.Cr.App. 1971). In today's common parlance, the constitutional requirement of an indictment may be referred to as a fundamental systemic requirement, which is a right or requirement "so important that [its] implementation is mandatory." *Marin v. State,* 851 S.W.2d 275, 280 (Tex.Cr.App. 1993). The author of the dissent, who also authored *Marin,* contends that *King* holds an indictment is not a fundamental systemic requirement because it is subject to waiver. Post at ——, n. 3; slip op. pg. 4, n. 3. But this conclusion is

derived from a misreading of *King* where we held art. I, § 10 is not violated by a defendant's waiver of an indictment under art. 1.141. *Id.,* 473 S.W.2d at 51. However, we further explained that *"a felony information acts in lieu of or as a substitute for an indictment and its validity is therefore essential to the court's jurisdiction." Id.,* at 51–52 (emphasis added). *See also, Lackey v. State,* 574 S.W.2d 97, 100 (Tex.Cr.App.1978). Consequently, *King* holds that art. 1.141 merely allows the substitution of one type of charging instrument for another, but does not otherwise affect the fundamental systemic requirement that a valid charging instrument be presented in order to vest the trial court with jurisdiction.

627 (1885). Jurisdiction vests only upon the filing of a valid indictment in the appropriate court. Tex. Const. Art. V, § 12(b). *See also, Crawford v. State,* 624 S.W.2d 906, 907 (Tex. Cr.App.1981); *and, Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Cr.App.1980).

### B.

■■■ Prior to 1985, this Court consistently held that "substantive" defects in the charging instrument failed to vest the trial court with jurisdiction and, therefore, a conviction on a substantively defective charging instrument could be challenged for the first time on appeal. *Studer,* 799 S.W.2d at 267; *Thompson,* 697 S.W.2d at 415; *Green v. State,* 571 S.W.2d 13, 14–15 (Tex.Cr.App. 1978); *Ex parte Garcia,* 544 S.W.2d 432, 432–433 (Tex.Cr.App.1976); *American Plant Food Corp. v. State,* 508 S.W.2d 598, 603 (Tex.Cr.App.1974); *Pospishel v. State,* 95 Tex.Crim. 625, 255 S.W. 738 (App.1923); *and, Woodard v. State,* 86 Tex.Crim. 632, 218 S.W. 760 (App.1920). This rule developed over more than a century of decisions in which we interpreted art. I, § 10 to create a "constitutional" requirement that a charging instrument allege all elements of the offense in order to constitute an indictment. *See, Brasfield v. State,* 600 S.W.2d 288, 301–302 (Tex.Cr.App.1980) (Op. on reh'g); *and, Williams v. The State,* 12 Tex.App. 395, 400–401 (Court of Appeals 1882). *See also,* George E. Dix, *Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform,* 38 Baylor L.Rev. 1, at 13–22 (1986). Accordingly, where the charging instrument omitted an element of the offense the indictment was void and the trial court lacked jurisdiction. *See e.g., Gengnagel v. State,* 748 S.W.2d 227, 229 (Tex.Cr.App. 1988); *Thompson,* 697 S.W.2d at 415; *Ex parte Luddington,* 614 S.W.2d 427, 428 (Tex. Cr.App.1981); *Brown v. State,* 558 S.W.2d 471, 472 (Tex.Cr.App.1977); *Ex parte Cannon,* 546 S.W.2d 266, 273–274 (Tex.Cr.App. 1976); *Jones v. State,* 388 S.W.2d 716 (Tex. Cr.App.1965); *and, Scott v. State,* 171 Tex. Crim. 53, 344 S.W.2d 457 (App.1961).

### C.

Frustrated with the common practice of defendants withholding substantive defects at trial and then raising them on appeal in order to vitiate the conviction, the Texas Legislature in 1985 proposed an amendment to art. V, § 12 of the Texas Constitution which authorized the Legislature to prescribe by statute the effects of substantive defects in the charging instrument. The amendment provided:

> An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments, including their contents, amendment, sufficiency and requisites are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

Art. V, § 12(b). In tandem with the constitutional amendment, the Legislature also drafted implementing legislation in the form of an amendment to Tex.Code Crim.Proc. Ann. art. 1.14. Art. 1.14(b) provided in pertinent part:

> If the defendant does not object to a defect, error, or irregularity of form or substance in the indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and may no raise the objection on appeal or in any other postconviction proceeding....

Art. 1.14(b) automatically took effect upon the voters approval of the amendment to art. V, § 12. *Studer,* 799 S.W.2d at 266, n. 3.

The amendment to art. V, § 12 was notable on two grounds. First, by granting to the Legislature the authority to prescribe legislation regulating the procedures and contents of charging instruments, the amendment reversed a century of precedent regarding the constitutional implications of charging instrument defects. *Studer,* 799 S.W.2d at 289–290 (Clinton, J., concurring).

■ Second, the amendment provided, for the first time in our history, a *constitutional* definition of an indictment. Art. V, § 12(b) defines an "indictment" as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Art. V, § 12(b). Therefore, to comprise an indictment within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense. Art. V, § 12(b). *See also, Luken v. State,* 780 S.W.2d 264, 267 (Tex.Cr.App.1989); *and* Robert R. Barton, *Since 1985, Can An Indictment or Information Be "Fundamentally" Defective for Failing to Charge an Offense?*, 25 St. Mary's L.J. 217, 225–226 (1993).

## III.

In *Studer*, we addressed the second prong of the constitutional definition, namely, the requirement that a charging instrument charge the commission of an offense.[2] Following his conviction on a plea of *nolo contendere*, Studer contended for the first time on appeal that his conviction was void because the information omitted an element of the offense. *Id.*, at 264–265.

In a thorough analysis of the legislative history of art. V, § 12(b) and art. 1.14(b) we observed the intent behind the amendments was not to "change what constitutes a substance defect, but rather only its effect" if not raised prior to trial. *Id.*, at 268. Thus, a substantive defect in the charging instrument remains a defect and renders the charging instrument subject to a motion to quash. However, we further noted that because the omission of an element of the offense was "still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element." *Ibid.* Accordingly, we concluded that a charging instrument is not required to allege every element of the offense in order to allege "the commission of an offense" as required by art. V, § 12(b). *Id.*, at 272.

■ From *Studer* it follows that with regard to the second prong of the definition for an indictment, a substantively defective indictment is sufficient to vest the trial court with jurisdiction. And in the wake of *Studer*, we have consistently held a charging instrument is not constitutionally void despite the omission of one or more elements of the offense. *Rodriguez*, 799 S.W.2d 301, 303 (Tex.Cr.App.1990) (indictment for evading arrest failed to allege defendant knew complainant was police officer who was attempting to arrest him); *Ex parte Morris*, 800 S.W.2d 225, 227 (Tex.Cr.App.1990) (forgery indictment failed to allege that writing purported to be act of another who did not authorize act); *and, Ex parte Gibson*, 800 S.W.2d 548, 551 (Tex.Cr.App.1990) (indictment failed to allege date of offense). *See also, State v. Murk,* 815 S.W.2d 556, 558 (Tex.Cr.App.1991).

## IV.

■ Today we are called upon to decide the question unanswered by *Studer*: does a charging instrument constitute an indictment within the constitutional definition of art. V, § 12(b) if it completely fails to charge "a person"?

■ While art. V, § 12(b), through its implementing legislation, art. 1.14(b), "deconstitutionalized" the requirement that an indictment allege every element of the offense, the amendment nevertheless provided a definition for an "indictment" which had heretofore been defined only statutorily. Thus, art. V, § 12(b) established constitutional requisites for a charging instrument to constitute an indictment. To constitute an indictment, the charging instrument must charge: (1) a person, and (2) the commission of an offense. It is clear, however, that if the charging instrument fails to charge a person, then it is not an indictment as required by art. V, § 12(b) and art. I, § 10.

■ The conclusion that art. V, § 12(b) establishes constitutional requisites for an

---

**2.** In addressing appellant's ground for review, we couched the issue as follows: "Does the wording ... 'An indictment or information is a written instrument ... charging a person with the commission of an offense' mean it is an instrument that *alleges all the constituent elements of an offense* or something else (specifically something less)." *Id.*, 799 S.W.2d at 266 (emphasis in original).

indictment is supported by construing art. V, § 12(b) and art. I, § 10 in accordance with standard rules of constitutional interpretation. As a first step, we attempt to effectuate the intent of the framers of a constitutional amendment, and the voters who approved that amendment. *Studer*, 799 S.W.2d at 272; *City of El Paso v. El Paso Community College District*, 729 S.W.2d 296, 298 (Tex.1986); *Gragg v. Cayuga Independent School Dist.*, 539 S.W.2d 861, 866 (Tex.1976); and, *Farrar v. Board of Trustees of Employees Retirement System of Texas*, 150 Tex. 572, 243 S.W.2d 688, 692 (1952). While art. V, § 12(b) was clearly intended to eliminate the requirement that an indictment charge every element of an offense, it is equally apparent that neither the Legislature nor the voters intended to abrogate the constitutional right to a charging instrument sufficient to constitute an indictment. *Studer*, 799 S.W.2d at 272, n. 12 ("The right to indictment by a grand jury ... has not been abolished...."). *See also*, Dix, 38 Baylor L.Rev. at 26, 28–34 (1986) (legislative history indicates legislators did not intend to eliminate necessity of an indictment). Consequently, art. V, § 12(b) cannot be read to dispense with the necessity of filing an "indictment" in the trial court in order to vest the court with jurisdiction and provide notice to the defendant.

 When construing constitutional provisions, we are required to interpret the Constitution as a whole, rather than piecemeal. *Oakley v. State*, 830 S.W.2d 107, 110 (Tex.Cr.App.1992); and, *Pierson v. State*, 147 Tex.Crim. 15, 177 S.W.2d 975, 977 (App. 1944). Thus, constitutional provisions are not to be examined in isolation from comparable provisions. In *Oakley* we explained:

> ... the Constitution must be read as a whole so as to give effect to each and every provision.... No part of the Constitution should be given a construction which is repugnant to express authority contained in another part, if it is possible to harmonize the provisions by any reasonable construction.

*Id.*, 830 S.W.2d at 110 (citations omitted). *See also*, *Clapp v. State*, 639 S.W.2d 949, 951 (Tex.Cr.App.1982); *Texas National Guard*

*Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939); *Collingsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13, 17 (1931); and, *Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130, 137 (1931). Because art. V, § 12(b) and art. I, § 10 address similar subjects, we are compelled to examine each provision in context and attempt to give effect to both unless they are irreconcilable. *Clapp*, 639 S.W.2d at 951–952. Comparing art. V, § 12(b) and art. I, § 10, we find they are complementary rather then conflicting. Art. V, § 12(b) should be read in context to art. I, § 10: the latter established the right to an indictment, and the former establishes the constitutional definition for what constitutes an indictment. Although art. V, § 12(b) subsequently authorizes the Legislature to prescribe the requisites and sufficiency of indictments, we do not read this grant of authority so broadly as to authorize the Legislature to prescribe rules which undermine the constitutional definition of an indictment because this would render art. V, § 12(b) internally inconsistent. *See*, *Gallagher v. State*, 690 S.W.2d 587, 591–592 (Tex.Cr.App.1985) ("Constitutional provisions will not be construed to be ambiguous or contradictory if such construction is possible."); and, *Clapp*, 639 S.W.2d at 951. ("... courts should avoid a construction (of constitutional provisions) which renders any provision meaningless or inoperative and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.") Since "[t]he language used (in a constitutional provision) must be presumed to have been carefully selected," we do not believe the Legislature would provide a constitutional definition of an indictment and then subsequently authorize itself to prescribe statutory rules which undermine that definition. *Gallagher*, 690 S.W.2d at 592.

 Moreover, a construction of art. V, § 12(b) which places the constitutional definition of an indictment within the purview of art. 1.14(b) is problematic because it subjects a constitutional provision to statutory authority. It is fundamental to constitutional and statutory construction that the Legislature lacks the authority to enact a statute

which conflicts with a provision of the Constitution. In *Dendy v. Wilson,* 142 Tex. 460, 179 S.W.2d 269 (1944), the Texas Supreme Court expressed this proposition as follows:

> The power to make laws is vested through the Constitution in the Legislature.... However, the Legislature does not have the power to enact any law contrary to the provisions of the Constitution. If any law or part thereof, undertakes to nullify the protection furnished by the Constitution, such law, or part thereof, that conflicts with the Constitution is void.

*Id.,* 179 S.W.2d at 273. *See also, Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923, 924–925 (1962); *City of Fort Worth v. Howerton,* 149 Tex. 614, 236 S.W.2d 615, 618 (1951); *Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943); *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265, 274 (1932); *Cameron v. Connally,* 117 Tex. 159, 299 S.W. 221, 223 (1927); *Crabb v. Celeste Independent School District,* 105 Tex. 194, 146 S.W. 528, 532 (1912); *and,* 12A Tex.Jur.3d, Constitutional Law, § 6. "Certainly, a statute cannot override the Constitution." *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 155 (1942). Thus, as Judge Clinton stated in his concurring opinion in *Studer:* "[The] meaning and import of Article V, § 12(b), insofar as it defines 'indictment or information,' is a question for this Court. The Legislature is free to prescribe 'contents ... sufficiency, and requisites,' [of an indictment] *but only within constitutional parameters.*"[3] *Id.,* 799 S.W.2d at 293 (Clinton, J., concurring). *See also,* Dix, 38 Baylor L.Rev. at 40–41.

■ Finally, although we attempt to construe a constitutional provision according to its literal language, we are nonetheless obliged to avoid a construction which renders an absurd or unreasonable result. 16 Am. Jur.2d, Constitutional Law, § 112, p. 464. *See also, In re Thoma,* 873 S.W.2d 477, 489 (Tex.Rev.Trib.1994); *and, Cramer,* 167 S.W.2d at 155 ("... constitutional and statutory provisions will not be so construed or interpreted as to lead to absurd conclusions ... if any other construction or interpretation can reasonably be indulged in ..."). For instance, in *DeDonato v. State,* 819 S.W.2d 164 (Tex.Cr.App.1991), Judge Maloney observed that with regard to the art. V, § 12's provision relating to court jurisdiction,

> ... a literal reading of article V, § 12(b) could lead to absurd results. If the mere presentment of an indictment could vest jurisdiction in any court, then, absent an objection from the defendant, a capital murder case could be properly tried in a county court. I cannot believe that such a result was the legislature's or the voter's intent.

*Id.,* at 168 (Maloney, J., concurring, joined by Baird and Benavides, JJ.). *See also, Marin v. State,* 851 S.W.2d 275, 279 (Tex.Cr.App. 1993) ("[A] person may not be tried in Texas for a felony offense by the County Court at Law, even if he consents.").

■ Similarly, we do not believe a reasonable construction of art. V, § 12(b) permits the conclusion that the constitutional definition of an indictment falls within the purview of art. 1.14(b) because this construction clearly leads to an absurd result. If art. V, § 12(b) subjects *all* requisites of an indictment to the scope of art. 1.14(b), and hence, to waiver, then we can conceive of no point at which a charging instrument is so deficient as to *not* constitute an indictment. Clearly, this construction of art. V, § 12(b) would permit a blank sheet of paper to suffice for a valid indictment. We do not believe the Legislature or the voters could have intended this result when approving art. V, § 12(b). Nor do we believe this construction of art. V, § 12(b) comports with the right to an indictment guaranteed by art. I, § 10.

■ We therefore hold that the definition of an indictment provided by art. V, § 12(b) establishes *constitutional* requisites for an indictment. Art. V, § 12(b) does not authorize the Legislature to statutorily change these fundamental requirements. *See, Howerton,* 236 S.W.2d at 618; *and, Dendy,* 179 S.W.2d at 273. Accordingly, to constitute an indictment as required by art. I, § 10 and art. V, § 12(b), a charging instrument must at least charge "*a person,*" with

---

**3.** All emphasis is supplied by author unless otherwise indicated.

the commission of an offense.[4] If the charging instrument fails to charge "a person" then it is not an indictment and does not vest the trial court with jurisdiction.[5] Moreover, because a valid indictment is essential for jurisdiction, it is not subject to waiver. *Crawford,* 624 S.W.2d at 907; *and, Lackey v. State,* 574 S.W.2d 97, 100 (Tex.Cr.App.1978).

## V.

In the instant case, the charging instrument wholly failed to charge "a person." Thus, the charging instrument did not meet the first prong of the constitutional definition of art. V, § 12(b). Consequently, the charging instrument was not an indictment as required by art. V, § 12(b) and art. I, § 10, and did not vest the trial court with jurisdiction. Therefore, appellant's conviction is void.

The judgment of the Court of Appeals is reversed and we remand this cause to the trial court with instructions to dismiss the prosecution in this cause.[6]

MANSFIELD, J., joins this opinion with the following note: I join the majority opinion of the Court, agreeing that a charging instrument that fails to charge "a person" is not an indictment as defined by art. V, § 12(b) and art. I, § 10 of the Texas Constitution. I am troubled, however, by the failure of trial counsel to object to the error in the charging instrument prior to trial, given that the error was obvious. Had this been done, a substantial amount of time and re-

sources (both State's and appellant's) would have been saved, and justice would have been better served.

WHITE and KELLER, JJ., dissent.

CLINTON, Judge, concurring on Appellant's Petition for Discretionary Review.

For the reasons stated in Judge Meyers' dissenting opinion, I concur in the Court's judgment in this cause. I agree with Judge Meyers that the majority's disposition is in all things inconsistent with the rationale and holding of *Studer v. State,* 799 S.W.2d 263 (Tex.Cr.App.1990), for precisely the reasons he gives in his dissent. I also agree with him that *Studer* was wrongly decided. *Id.,* at 286–293 (Clinton, J., concurring). Moreover, something very similar to the approach Judge Maloney now advances in his concurring opinion, derived from his opinion for the Court in *Fisher v. State,* 887 S.W.2d 49 (Tex. Cr.App.1994), was suggested at the time of *Studer,* but rejected. *Id.,* at 293. I can only conclude that the majority's disposition today is fundamentally at odds with *Studer.*

Unlike Judge Meyers, I have no compunction about overruling *Studer, stare decisis* notwithstanding. As I observed in a companion case to *Studer, Rodriguez v. State,* 799 S.W.2d 301 (Tex.Cr.App.1990):

"In attempting to pluck what it perceives to be the stray thread of fundamentally defective indictments from the criminal jurisprudence, the majority threatens to unravel the whole fabric of our criminal procedure."

---

**4.** Perhaps one could argue that the instant charging instrument, by simply stating "the defendant," charged "a person." However, such a construction would effectively nullify the constitutional definition of art. V, § 12(b). Rather, we believe art. V, § 12(b) requires that an indictment charge a particular person. This interpretation is consistent with the statutory definition of an indictment provided by Tex.Code Crim. Proc.Ann. art. 21.01: "An indictment is the written statement of a grand jury accusing a person *therein named* of some act or omission which, by law, is declared to be an offense."

**5.** We pause to note that we are not addressing a situation where the charging instrument alleges an incorrect name, *see,* Tex.Code Crim.Proc.Ann.

arts. 26.07 and 26.09 (accused is obliged to state true name when charging instrument is read at arraignment), or where the person's name is unknown and the charging instrument alleges only a physical description, *see,* Tex.Code Crim. Proc.Ann. art. 21.07 ("... When the name of the person is unknown to the grand jury, that fact shall be stated, and if it be the accused, a reasonably accurate description of him shall be given in the indictment."). In such cases, the charging instrument is an indictment within the meaning of art. V, § 12(b) because whether erroneously or through a lack of information, the indictment still charges "a person."

**6.** Appellant's remaining ground for review is dismissed.

*Id.,* at 304 (Clinton, J., dissenting). See *Studer v. State,* supra, at 292 (Clinton, J., concurring). At the risk of mixing metaphors, I would nip that threat as close to the bud as possible, and admit that we are overruling *Studer.* Because, as Judge Meyers ably illustrates, the Court all but does so, I concur in its judgment. In failing expressly to overrule *Studer,* however, the Court is intellectually dishonest, and for that reason I cannot join its opinion.

MALONEY, Judge, concurring.

I join the opinion of the majority, but write separately to emphasize that the majority's opinion is consistent with and strengthened by the principles set forth in *Fisher v. State,* 887 S.W.2d 49 (Tex.Crim.App.1994). I also write to point out that the dissenting opinion rests upon a flawed reading of this Court's opinion in *Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990).

I.

The majority correctly states that the constitutional amendments in 1985 provided for the first time a definition of "indictment." *Majority opinion* at 477. Under this new definition, an "indictment" is an instrument that charges (1) a person (2) with the commission of an offense. *Id.* at 477.

This Court in *Studer v. State,* 799 S.W.2d at 268, held that "the commission of an offense" was still alleged despite the omission of an element of the offense. We expounded on this notion in *Fisher,* supra, where we discussed the problem of determining sufficiency of the evidence in the event of an indictment, like that in *Studer,* that does not allege all of the elements of the offense. We began by recognizing the relationship between the indictment, a defendant's expectations about what he would be tried for, the jury instructions, and ultimately the appellate court's review of the sufficiency of the evidence to support the conviction. We emphasized that "there must be a connection between the crime with which a defendant is charged in the indictment and a reviewing court's role in reviewing the sufficiency of the evidence to support a conviction." *Fisher,* 887 S.W.2d at 53. Accordingly, we concluded that it was necessary to be able to identify the offense with which the defendant was charged in the indictment, and we set forth a scheme by which that could be accomplished even in the face of an inadequate indictment. *Id.* at 55–58.

It logically follows from our reasoning and holding in *Fisher* that in order to charge "the commission of an offense" for purposes of Article V, § 12, there must be enough alleged to enable one to identify the offense.[1] This principle also logically applies to the portion of the constitutional definition that the instrument charge "a person." Enough must be alleged so that a person is identifiable in the body of the indictment as one charged with the commission of an offense. No person is named or described as the accused in the indictment in the instant case. Therefore, appellant correctly asserts that the charging instrument is constitutionally deficient. For these reasons, as well as those discussed in the majority opinion, I join the opinion of the Court.

II.

The dissent disparages the majority for "revis[ing] the essential holding of *Studer* [.]" *Dissenting opinion* at 483 (Meyers, J., dissenting). Curiously, the dissent's own rendition of the Court's holding in *Studer* repre-

---

1. In *Fisher* we stated,
 We assume in this opinion that the indictment alleges enough to identify the offense charged. For example, an indictment might allege only four of five elements of a particular offense. By comparing the allegations in the indictment, albeit incomplete, with various penal code provisions, one should be able to determine which entire offense the State is alleging. *Fisher,* 887 S.W.2d at 55 n. 10. Slightly further elaboration is needed to put this approach into practice. If it is the case that all of the allegations in the indictment are common to more than one offense, and none are distinguishing to any single offense, then I would hold that the offense charged is that to which the fewest elements must be added to those alleged in order to arrive at a complete offense. If the allegations in the indictment are so deficient that one cannot identify the offense alleged, then the indictment is insufficient to confer subject matter jurisdiction.

sents a significant departure from the actual language of the opinion.

The dissent summarizes the holding in *Studer* as follows:

A written instrument presented to a court by a grand jury which does not charge "an offense" is, nevertheless, an indictment, and, therefore, invests the court with jurisdiction.

*Id.* at 484. It then goes on to revisit and track the analysis in *Studer* leading to this purported holding. First noted is that *Studer* held that the failure to allege all of the elements of the offense is a defect of substance. This is accurate. The dissent then identifies the first of the four statutory defects of substance as "failure to charge an offense[.]" *Id.* at 484. Following this, the dissent states that *Studer* therefore concluded that "a written instrument which does not allege every constituent element of a statutory crime is substantively defective *because it does not charge an offense.*" *Id.* (emphasis added).

The flaw in this line of reasoning springs from a loose rephrasing of the first of the statutorily defined defects of substance. Article 27.08 provides that it is a defect of substance of an indictment or information "[t]hat it does not appear therefrom that an offense against the law was committed by the defendant." Tex.Code Crim.Proc.Ann. art. 27.08(1). The dissent restates this as provid-

ing that it is a defect of substance of an indictment or information that it "does not charge an offense." I cannot agree with this broad translation. "That it does not *appear* that an offense was committed" is far different from "that it does not *charge* an offense."

This distinction is critical in light of the constitutional requirement that an indictment charge "the commission of an offense." Tex. Const. Art. V, § 12. Under the dissent's rephrasing of the matter, article 27.08 permits waiver of what the constitution requires—the constitution requires that an indictment charge an offense; yet (according to the dissent's rephrasing) article 27.08 provides that the "failure to charge an offense" is a defect of substance which, under article 1.14(b) is waivable. Under a true reading of the provisions, the constitution requires that an indictment charge the commission of an offense; article 27.08 provides that it is a defect of substance "that it does not *appear* that an offense was committed." [2] (emphasis added). The constitution speaks in terms of what is necessary to *charge* the commission of an offense; article 27.08 speaks in terms of whether it *appears* from the allegations that an offense was committed. The essential holding of *Studer* was that the absence of an element made it *appear* that an offense was not committed (a defect of substance), but was nevertheless sufficient to *charge* the commission of an offense for constitutional purposes of jurisdiction.[3]

2. The dissent points out that article 27.08 has long been interpreted to mean that an indictment is substantively defective if it does not charge an offense, despite its language to the effect that it does not *appear* that an offense was committed. *Dissenting opinion* at 484, n. 2 (Meyers, J., dissenting). These interpretations, however, were made prior to the constitutional amendments in 1985 which added the definition of "indictment." As emphasized in the majority's opinion, constitutional and statutory provisions should be interpreted in harmony, if possible, so as to give meaning and effect to both. *See Majority opinion* at 478–479.

3. It is elemental that a trial court must have subject matter jurisdiction. As explained by this Court,

A court of competent jurisdiction means a court that has jurisdiction of the offense. [citation omitted] ... One of the requisite elements of 'jurisdiction' is jurisdiction over the subject

matter. *The expression 'subject matter,' as used with reference to the problem of jurisdiction, in criminal law, refers to the offense.* *Hultin v. State*, 171 Tex.Crim. 425, 351 S.W.2d 248, 255 (App.1961) (emphasis added). This Court has further stated that jurisdiction means "the right to adjudicate concerning the *subject matter* in a given case." *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Crim.App.1980) (quoting *Ex parte Armstrong*, 110 Tex.Cr.R. 362, 8 S.W.2d 674, 676 (1928)). Without subject matter jurisdiction a court has no authority to act.

The constitutional and statutory amendments and our interpretation of them in *Studer*, have not eliminated the basic notion of subject matter jurisdiction. The Texas Constitution as amended provides that "the presentment of an indictment or information to a court invests the court with jurisdiction of the cause." In order to give meaning to this provision and the constitutional requirement that the indictment charge the commission of "an offense," they must be construed as requiring that the indictment allege enough to

As the majority points out, in construing constitutional provisions, "we are obliged to avoid a construction which renders an absurd or unreasonable result." *Majority opinion* at 479. In order to charge "the commission of an offense" an indictment must allege *enough* so that the offense alleged can be identified. This vests the court with subject matter jurisdiction. *See* fn. 2, supra. Article 1.14(b) and 27.08 do not permit waiver of subject matter jurisdiction. Rather, if enough is alleged to enable the identification of an offense for purposes of subject matter jurisdiction under the constitution, but the allegations are nevertheless deficient so that technically it does not appear that an offense was committed, there is a waivable defect of substance. This is what happened in *Studer*.

The dissent repeatedly states that in *Studer* this Court decided that the indictment there did not charge an offense. The dissent quotes the following language from *Studer*:

> The change in Art. 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral attack. If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element.

*Dissenting opinion* at 485 (quoting *Studer*, 799 S.W.2d at 268). Nowhere in this quoted language or anywhere else in the opinion can I find that the Court stated that the indictment failed to charge an offense. The issue presented in *Studer* was whether the indictment's *failure to allege all of the elements of an offense* could be raised for the first time on appeal, or whether such defect was in fact

waived.[4] The defect presented in *Studer* was not such that the offense (and accordingly the subject matter jurisdiction of the court) could not be determined. There was an absence of one element.[5] Indeed the Court spoke throughout the opinion in terms of "omitting an element", "the omission of that element", that an indictment "need not necessarily allege every element", a "missing element", "if an element of an offense is omitted", "the omission of an element", "missing an element", "each constituent element", "the absence of an element", and "each element of the offense". Nowhere in our opinion in *Studer* is there any discussion of the possibility that an indictment might omit more than one or even all elements of an offense and remain constitutionally sound.

With these comments, I join the opinion of the majority.

MANSFIELD, J., joins.

MEYERS, Judge, dissenting on Appellant's Petition for Discretionary Review.

I believe that *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990) was wrongly decided, mainly for the reasons given by the majority in this case. Accordingly, I do not disagree, at least in the abstract, with most of what the majority opinion has to say. Where I part company with my colleagues on this issue is at the point where they revise the essential holding of *Studer* to support a distinction which is at odds both with logic and with the law.

The Texas Constitution defines "indictment" as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense"[1] and it

---

identify the offense charged and accordingly invest subject matter jurisdiction. This is also consistent with the principles set forth in *Fisher*, as discussed above.

4. *Studer* presented the issue as

> Does the wording "An indictment or information is a written instrument ... charging a person with the commission of an offense" mean it is an instrument that *alleges all the constituent elements of an offense* or something else (specifically something less).

*Studer*, 799 S.W.2d at 266 (emphasis in original).

5. We readily identified the offense charged, but noted the absence of a single allegation. We stated that the defendant was charged with indecent exposure, but the indictment failed to allege the act or acts relied upon to constitute recklessness.

1. The Code of Criminal Procedure describes it somewhat differently as "the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense." Tex.Code Crim.Proc. art. 21.01.

provides that "presentation of an indictment ... to a court invests the court with jurisdiction of the cause." Tex. Const. art. 5, § 12. In *Studer* we held that a written instrument presented to a court by a grand jury which does not charge "an offense" is, nevertheless, an indictment and, therefore, invests the court with jurisdiction. Today, a majority of the Court holds that a written instrument presented to a court by a grand jury which does not charge "a person" is not an indictment and does not, therefore, invest the court with jurisdiction. The basis for this remarkable distinction is not made clear by the majority opinion, and because the requirement that an indictment charge "an offense" is given by the same constitutional provision requiring it to charge "a person," I cannot subscribe to the view that one requirement is forfeitable while the other is not.

The Court's mistake, I think, derives from a fundamental misunderstanding of our opinion in *Studer*. The majority seems to think that, under the *Studer* rationale, an indictment may be sufficient to charge an offense even though it fails to allege all essential elements of that offense so long as one can tell from examining it what offense the State intended to charge. *See Fisher v. State*, 887 S.W.2d 49 (Tex.Crim.App.1994); *Thomason v. State*, 892 S.W.2d 8 (Tex.Crim.App.1994). But that was not *Studer*'s rationale at all. What this Court actually held in *Studer*, and in its companion case of *Rodriguez v. State*, 799 S.W.2d 301 (Tex.Crim.App.1990), was

that any written instrument returned by a grand jury is an indictment for purposes of investing a court with jurisdiction, whether it charges "an offense" or not. A brief restatement of the argument given in *Studer* makes this perfectly clear.

We began our analysis with the proposition that failure of an indictment or information to allege all constituent elements of an offense is a defect of substance and that "[t]he amendments to Art. 1.14, V.A.C.C.P., and Art. V, § 12 did not, on their face, change this long-standing precedent." 799 S.W.2d at 268. We conceded that there are only four defects of substance known to Texas criminal law: failure to charge an offense [2], failure to allege a date within the statutory period of limitation, allegation of a defense, and apparent lack of jurisdiction. Tex.Code Crim. Proc. art. 27.08; 799 S.W.2d at 267. We concluded that a written instrument which does not allege every constituent element of a statutory crime is substantively defective because it does not charge an offense.[3]

Having thus decided that the purported indictment in *Studer* did not charge an offense, we next proceeded to inquire whether the failure of a written instrument to charge an offense means that it is not an indictment within the meaning of the Texas Constitution, article V, section 12. Reasoning that the Code of Criminal Procedure, article 1.14(b), requires *all* defects of substance in an indictment, including its failure to charge an offense, to be raised prior to trial, we

2. Article 27.08, Subdivision 1 says that an indictment or information is substantively defective if "it does not appear therefrom that an offense against the law was committed by the defendant." This Court has always understood the statute to mean that an indictment is substantively defective if it does not charge an offense. The cases which illustrate this fact are legion. For present purposes, however, it is sufficient to quote from only one of the most famous and influential.

> Only if the defect be of such a degree as to charge no offense against the law, and thereby be void, will the exception to the substance be considered for the first time on appeal under Article 27.08(1), supra.

*American Plant Food Corp. v. State*, 508 S.W.2d 598, 604 (Tex.Cr.App.1974). Any suggestion, therefore, that an indictment may be sufficient to charge an offense within the meaning of the

Constitution, yet "appear" not to charge an offense within the meaning of article 27.08(1), would represent an interpretation of the latter so radically different from any thus far contemplated by our precedents as to be entirely novel. For present purposes, however, it is enough to know that our opinion in *Studer* expressly eschewed any departure from existing case law on the subject.

3. Clearly, omission of a constituent element does not suggest that the prosecution is limitations barred, that the alleged conduct was excused or justified, or that the subject matter of the prosecution is otherwise beyond the trial court's jurisdiction. Accordingly, if omission of a constituent element is indeed a defect of substance, it must be because a failure to plead all offensive elements is tantamount to a failure to charge an offense.

inferred that the Legislature did not mean to imply a written instrument is not really an "indictment" unless it charges the commission of an offense.

The change in Art. 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral attack. If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element.

799 S.W.2d at 268.

It is thus apparent that Studer was making exactly the same argument Cook makes in the instant cause. He argued that defects in an indictment must be raised before trial only if the defective instrument is actually an indictment under the constitutional definition. He maintained that a written instrument which does not charge an offense is not an indictment, just as Cook now maintains that a written instrument which does not charge a person is not an indictment. This argument, however, was plainly and unambiguously rejected in *Studer.* That the Court now accepts it in the instant cause represents a significant revision of our *Studer* position which, in fairness to bench and bar alike, we ought to acknowledge.

Mind you, I am not irrevocably opposed to such a revision. Indeed, I am sympathetic with the view, expressed in the majority opinion here, that an indictment does not

"invest a court with jurisdiction," as the Constitution puts it, unless it "charg[es] a person with the commission of an offense." This is not because I think that a written instrument *should* be made a necessary prerequisite to the exercise of a trial court's jurisdiction, any more than I think it *should not.* In my opinion, the lawmakers of this State may choose to predicate the exercise of trial-level criminal jurisdiction upon the existence of a written instrument if they see fit to do so. But, should they instead decide to dispense with the requirement of a charging instrument altogether, I would not be inclined to think it unconstitutional. After all, the grand jury screening to which defendants are constitutionally entitled in felony cases can be accomplished without memorializing the process in a formal document, and the notice to which defendants are constitutionally entitled in all criminal cases can be provided from a different source. Tex. Const. art. I, § 9.

Nevertheless, it is apparent that the people of Texas have not in fact opted to dispense with formal charging instruments in criminal cases. Indeed, they have deliberately chosen to require an indictment or information before "invest[ing] [a] court with jurisdiction" of a criminal case.[4] And, lest there be any doubt about what specifically is necessary for the exercise of such jurisdiction, they have gone on expressly to say that "a written instrument presented to a court by a grand jury charging a person with the commission of an offense" is required. This seems pretty clear to me.

4. Ironically, the majority seems to concede that, under our prior law, as interpreted in *King v. State,* 473 S.W.2d 43 (Tex.Crim.App.1971), indictments were not really jurisdictional, since they could be waived. Op. at 475 n. 1. Jurisdictional defects, of course, are not waivable. But the majority then goes on to describe "the constitutional requirement of an indictment" as a "fundamental systemic requirement" under our holding in *Marin v. State,* 851 S.W.2d 275 (Tex.Crim. App.1993) because it is "so important that it is mandatory absent an express waiver." This is wrong, of course. Under *Marin,* fundamental systemic requirements are not waivable at all. Perhaps it is the majority's view that the constitutional requirement that an indictment name "a person," while not jurisdictional, is nevertheless cognizable on direct appeal even absent a trial objection because it is a waivable right of the

defendant. If so, the majority opinion is especially interesting, since the Constitution does not seem to make the indictment itself a right of the defendant. The truth is that, prior to the amendment of article 5, section 12 in 1985, the Texas Constitution did not provide that any specific written instrument was necessary to "invest the court with jurisdiction of the cause." It was only our case law that did that—the very case law sought to be eliminated by the amendments of 1985, and which were eliminated in fact by our holding in *Studer.* Accordingly, the majority's position would be better supported by a claim that the constitutional amendment effectively overruled *King.* But then, of course, the Code of Criminal Procedure articles providing for the waiver of an indictment would be unconstitutional.

But *Studer* would not have it to be so, and I will not disgrace the jurisprudence of this Court or insult the intelligence of trial judges and lawyers by pretending that *Studer* is consistent with the majority view in this case when it obviously is not. The *Studer* Court realized that its interpretation of the questioned constitutional language was not literal. In fact, it consciously decided not to construe such language according to its plain meaning because it realized that doing so would effectively undermine the purpose of those legislators who enacted the Code amendments and those citizens who approved the constitutional amendments in question. In fact, nearly half of our opinion in *Studer* is actually devoted to investigating and articulating extratextual sources of legislative intent in order to demonstrate why the constitutional definition of "indictment" should not be read as it is written. The author of *Studer* even cited it in a later dissenting opinion as one of two contemporary, leading authorities for the proposition that "ambiguity in a statute is not apparent until the legislative history is researched and the true legislative intent is discerned." *Boykin v. State*, 818 S.W.2d 782, 789 (Tex.Crim.App.1991) (Miller, J., dissenting).

Thus, although I believe *Studer* was wrongly decided, it was by no means an accident, nor was its rationale expressed by the Court without due consideration. Fully five years passed between enactment of the statutory and constitutional amendments and our construction of them in *Studer*. During that time, the issues were vigorously debated in the courts of appeals and eventually in this Court. Everyone knew what the arguments were on both sides. And, in the end, the Court's opinion was virtually unanimous. Only a single judge expressed significant disagreement with the majority rationale. *See Studer*, 799 S.W.2d at 286 (Clinton, J., concurring); *Rodriguez*, 799 S.W.2d at 303 (Clinton, J., dissenting).

Now, only five years later, most of the *Studer* Court is gone. And so, apparently is *Studer* itself. What began as a grass roots movement for the reform of charging instrument law, focused almost exclusively on the elimination of jurisdictional defects from indictments and informations, has now become a caricature of itself. It is just the sort of thing that introduces unnecessary complexity into the case law, confuses practitioners, and diminishes this Court in the estimation of judges and scholars. If it were the pleasure of this Court to reexamine the holding in *Studer*, I would most likely approve the effort. If, after reconsideration, it were the opinion of the Court to overrule or substantially qualify *Studer*, I might even be willing to join the opinion, so long as it had the overwhelming support of my colleagues, definitively settled the issue, and was justified by more than a mere acknowledgement of error. But the Court has done none of these things in the instant cause, and seems disinclined to do them in future. Instead, it merely reverses course, quietly reinstating the law of jurisdictional pleading defects and pretending all the while that *Studer* is still alive and well. But, of course, it isn't.

The rule of *stare decisis* obliges appellate judges to respect the precedents of their own court, whether they agree with those precedents or not. That does not mean, of course, that bad cases should never be overruled. It only means that cases should not be overruled without a compelling reason. It also means that cases should not be distinguished on patently fictitious grounds. The underlying rationale of *Studer*, however mistaken it may have been as a matter of constitutional interpretation, is nevertheless a more coherent and workable approach to charging instrument law than the one with which, inspired by *Fisher* and *Thomason*, the Court leaves us in this case. Because I cannot agree that there are compelling reasons to make a bigger mess of the law than *Studer* already has, I respectfully dissent.