In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00235-CR
______________________________


JOSHUA DAVID STEVENS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31,001-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Joshua David Stevens appeals his conviction for delivery of a controlled substance, namely
methamphetamine. On December 20, 2004, Stevens was placed on deferred adjudication for ten
years. Stevens waived the appeal. On June 17, 2005, the State filed an application for the
adjudication of guilt, alleging Stevens failed to report, failed to pay various fees, failed to perform
community service, and used controlled substances, specifically marihuana and methamphetamine. 
The trial court adjudicated guilt and sentenced Stevens to twenty-five years' imprisonment. On
appeal, Stevens raises two issues: that the indictment was insufficient to confer jurisdiction to the
trial court and that he received ineffective assistance of counsel. We affirm.
Â Â Â Â Â Â Â Â Â Â Â Â Before this Court can address the merits of Stevens' arguments, we must first determine if
we have jurisdiction over this appeal. The United States Constitution does not guarantee a criminal
defendant the right to appeal a conviction. McKane v. Durston, 153 U.S. 684, 687 (1894). Nor does
the Texas Constitution provide such a right. Phynes v. State, 828 S.W.2d 1, 2 (Tex. Crim. App.
1992). Instead, a defendant's right to appeal a criminal conviction in Texas "is only as provided by
the legislature." Id. As it relates to the case now before us, the Texas Legislature has expressly
stated that a defendant may not appeal a trial court's decision to proceed to an adjudication of guilt. 
See Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 5(b) (Vernon Supp. 2005); Connolly v. State, 983
S.W.2d 738, 741 (Tex. Crim. App. 1999); Cooper v. State, 2 S.W.3d 500, 502 (Tex.
App.âTexarkana 1999, pet. ref'd). Further, the general rule is an appellant may raise issues relating
to the original plea proceeding placing the defendant on deferred adjudication community
supervision only in appeals taken when community supervision was first imposed. Manuel v. State,
994 S.W.2d 658, 661 (Tex. Crim. App. 1999). The Legislature's prohibition includes all complaints
attaching to the trial court's decision to proceed to an adjudication of guilt, except for those
challenges to a void judgment, the habeas corpus exception, or issues related to proceedings
following the adjudication decision. See, e.g., Nix v. State, 65 S.W.3d 664, 667â68 (Tex. Crim. App.
2001) (recognizing applicability of "void judgment" exception to the deferred adjudication
proceedings); Fluellen v. State, 71 S.W.3d 870, 872 (Tex. App.âTexarkana 2002, pet. ref'd)
(defendant whose guilt was adjudicated may appeal issues relating to sentencing). Thus, Stevens can
only appeal a void judgment or issues related to proceedings following the adjudication decision. 
Because Stevens' ineffective assistance of counsel claims do not relate to a void judgment or issues
following the adjudication decision, Stevens cannot raise the issue on direct appeal. See Bahm v.
State, 184 S.W.3d 792 (Tex. App.âBeaumont 2006, pet. filed); see also Manuel, 994 S.W.2d at
661â62. 
Â Â Â Â Â Â Â Â Â Â Â Â In his first point of error, Stevens argues the trial court lacked jurisdiction because the
indictment was so defective as to be a nonindictment. A judgment is void in very rare situations,
usually due to a lack of jurisdiction.


 The indictment in this case provides as follows in pertinent
part:
knowingly deliver, by actual transfer, to C. Payne, a controlled substance, namely,
a material, compound, mixture, or preparation in an amount of four grams or more
but less than two-hundred grams, that contained a quantity of 3,4-methyldioxymethamphetamine . . . .

The indictment clearly alleges that Stevens possessed a controlled substance.


 However, the
compound alleged 3,4-methyldioxymethamphetamine is not listed in the Texas Controlled
Substances Act. See Tex. Health & Safety Code Ann. Â§Â§ 481.001â.205 (Vernon 2003 & Supp.
2005). The Texas Health and Safety Code, though, does include a compound entitled 3,4-methylenedioxy methamphetamine. Tex. Health & Safety Code Ann. Â§ 481.103. The compound
described in the Texas Health and Safety Code contains the letters "ene," which are not included in
the indictment.
Â Â Â Â Â Â Â Â Â Â Â Â In support of his argument, Stevens cites Cook v. State, 902 S.W.2d 471 (Tex. Crim. App.
1995), and Duron v. State, 956 S.W.2d 547 (Tex. Crim. App. 1997). In Cook, a fractured


 Texas
Court of Criminal Appeals held that an indictment is not required to charge every element of an
offense in order to vest jurisdiction with the trial court, with the proviso that an indictment must
charge a person with a criminal offense. Cook, 902 S.W.2d at 477â78. In Duron, the Texas Court
of Criminal Appeals explained that the indictment must allege an offense with enough specificity
and clarity that the defendant can ascertain the penal statute under which the State intends to
prosecute. Duron, 956 S.W.2d at 550â51.
Â Â Â Â Â Â Â Â Â Â Â Â Historically, "fundamental" errors in the indictment could be challenged at any point in the
proceedings. See, e.g., Morris v. State, 13 Tex. App. 65, 71 (1882); see also Cook, 902 S.W.2d at
476. In 1985, Texas voters approved an amendment to Section 12 of Article V of the Texas
Constitution that a defect of form or substance in an indictment is waived if no objection is made
before the date trial commences and that the presentation of an indictment or information vests the
trial court with jurisdiction over the case. Tex. Const. art. V, Â§ 12; see Studer v. State, 799 S.W.2d
263, 272 (Tex. Crim. App. 1990); see also Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005),
arts. 21.01â.31 (Vernon 1989 & Supp. 2005).
Â Â Â Â Â Â Â Â Â Â Â Â However, an instrument which is not an "indictment" under Article V, Section 12 of the
Texas Constitution fails to vest the trial court with jurisdiction and can be raised for the first time
on appeal. See Duron, 956 S.W.2d at 555; Cook, 902 S.W.2d at 479â80. "[T]o comprise an
indictment within the definition provided by the constitution, an instrument must charge: (1) a
person; (2) with the commission of an offense." Cook, 902 S.W.2d at 476. "[A] written instrument
is an indictment or information under the Constitution if it accuses someone of a crime with enough
clarity and specificity to identify the penal statute under which the State intends to prosecute, even
if the indictment is otherwise defective." Duron, 956 S.W.2d at 550â51. The issue presented to this
Court is whether the omission of the letters "ene" prevents the charging instrument from describing
the crime with enough clarity and specificity to identify the relevant penal statute.
Â Â Â Â Â Â Â Â Â Â Â Â Stevens argues that 3,4-methyldioxymethamphetamine is a mere "jumble of letters that means
nothing." The State responds, although the record is not clear whether 3,4-methyldioxymethamphetamine is a salt or isomer of 3,4-methylenedioxy methamphetamine, the
compounds are essentially identical and no reasonable person would be confused. Although the
indictment in this case misspelled the scientific name of the controlled substance, the indictment
provided sufficient notice to the defendant. In general, the mere misspelling of a name does not
prevent an indictment from alleging an offense, provided the indictment nevertheless provides the
necessary notice of the statutory offense. See Cantu v. State, 944 S.W.2d 669, 671 (Tex.
App.âCorpus Christi 1997, pet. ref'd) ("heroin" misspelled as "herion"); Ex parte Eckrich,
No.Â 02-04-00133-CR, 2004 Tex. App. LEXIS 5398 (Tex. App.âFort Worth June 17, 2004, no pet.)
(mem. op.) (not designated for publication) ("3,4-methylenedioxy methamphetamine" misspelled
as "3,4-theylenedioxy methamphetamine"); see also Fitts v. State, 982 S.W.2d 175, 184 (Tex.
App.âHouston [1st Dist.] 1998, pet. ref'd) ("remuneration" misspelled as "renumeration"); Enriquez
v. State, No. 08-02-00005-CR, 2004 Tex. App. LEXIS 6480 (Tex. App.âEl Paso JulyÂ 21, 2004, no
pet.) (not designated for publication) ("benefit" misspelled as "bebfit"). Given the similarity between
the names of the compounds and that the indictment clearly provides Stevens was accused of
delivery of a controlled substance, no reasonable person would have been confused that the State was
alleging delivery of a controlled substance listed in penalty groupÂ 2 of the Texas Controlled
Substances Act. Such a conclusion is particularly true when one considers that scientific names
appear excessively complex to most laymen. The indictment, even with the misspelled word,
accused Stevens of a crime with enough clarity and specificity to identify the penal statute under
which the State intended to prosecute. As such, Stevens was not deprived of the screening function
of a grand jury.


 The typographical error in the spelling of the scientific name of the compound is
not sufficient to deprive Stevens notice of the crime of which he was accused or to deprive the trial
court of jurisdiction. We overrule Stevens' first point of error.
Â Â Â Â Â Â Â Â Â Â Â Â For the reasons stated, we affirm the judgment of the trial court.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â April 21, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â May 2, 2006

Do Not Publish



0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-141-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00141-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JESSE DWAYNE BLACK,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the Sixth
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Lamar County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 23640

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Jesse Dwayne
Black was driving a maroon Toyota TundraÂbearing Texas license number 15FLD5
and filled with gasolineÂin front of a Murphy Oil Company filling station in
Paris, Texas, when spotted by Paris Police Officer Curtis Graham.Â  Graham was, at that moment, in the midst of
investigating a theft of $60.11 worth of gasoline from that station just
minutes beforeÂa theft reportedly committed by a man matching BlackÂs
description and driving a maroon Toyota Tundra, license number 15FL05, not
exactly matching the correct number, 15FLD5.

Â Â Â Â Â Â Â Â Â Â Â  Black was
arrested by Graham, and convicted by a jury, for theft of property, of less
than $1,500.00, with two prior convictions.Â 
The trial court assessed punishment, sentencing Black to two yearsÂ
confinement in a state-jail facility.Â 
Black appeals, asserting only ineffective assistance of his trial
counsel.Â  We affirm the trial courtÂs
judgment.

Â Â Â Â Â Â Â Â Â Â Â  The evidence
in this case consists of the testimony of the attendant operating the filling
station and the arresting officer.Â  The
record shows that the attendant called police, stating that a person in a
maroon Toyota Tacoma[1]
had driven off without paying for $60.11 of gasoline.Â  He reported that the truck bore license
number 15FL05.Â  Graham came to the
station and spoke with the attendant, who informed him that the vehicle was a
maroon Toyota Tundra pickup and that the driver was a black male in his
mid-forties with a mustache.Â  While
talking to the attendant, Graham saw a truck matching that description driving
on Lamar Avenue in front of the station. 

Â Â Â Â Â Â Â Â Â Â Â  Graham
stopped the vehicle driven by BlackÂa Toyota Tundra, license number
15FLD5.Â  The officer checked the gas
gauge, which showed the tank was full, and then took Black to the station,
where the attendant, without hesitation, identified him as the thief. 

Â Â Â Â Â Â Â Â Â Â Â  On appeal,
Black argues that his trial counsel was constitutionally ineffective in failing
to object to various pieces of evidence used at trial:Â  a ÂshowupÂ identification of Black at the
police station, identification of Black resulting from an allegedly unlawful
arrest, in-court identification of Black, GrahamÂs allegedly ÂbolsteringÂ
testimony that the attendant identified Black on the spot, and the allegedly
irrelevant audio portion of the police unitÂs arrest video of BlackÂabout seven
minutes of BlackÂs repetitive cursing and racial comments.

Â Â Â Â Â Â Â Â Â Â Â  The
standard of testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984).Â 
To prevail on this claim, a defendant must prove by a preponderance of
the evidence (1) that his or her counselÂs representation fell below an
objective standard of reasonableness and (2) that the deficient performance
prejudiced the defense.Â  Id. at 689; Rosales v. State, 4
S.W.3d 228, 231 (Tex. Crim. App. 1999).Â 
To meet this burden, a defendant must prove that the attorneyÂs
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for the attorneyÂs deficiency,
the result of the trial would have been different.Â  Ex parte Martinez, 195 S.W.3d 713, 730
(Tex. Crim. App. 2006); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).Â  Under this standard, a defendant must prove
that counselÂs representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result.Â  Strickland, 466 U.S.
at 686.

Â Â Â Â Â Â Â Â Â Â Â  ÂThis
requires a showing that counsel made errors so serious that counsel was not
functioning as ÂcounselÂ guaranteed the defendant by the Sixth Amendment.Â Â Ex parte Nailor, 149 S.W.3d 125, 130
n.15 (Tex. Crim. App. 2004) (quoting Strickland, 466 U.S. at 687).

Â Â Â Â Â Â Â Â Â Â Â  No motion
for new trial was filed in this case, and no post-trial hearings were
conducted.Â  We thus have no record to
explain why trial counsel conducted the trial as he did.

Â Â Â Â Â Â Â Â Â Â Â  Where an
appellate record is silent as to why trial counsel failed to take certain
actions, the appellant has failed to rebut the presumption that trial counselÂs
decision was in some way reasonable.Â  See
Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).Â  The ineffectiveness of counsel is a matter
that must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.Â 
Smith v. State, 51 S.W.3d 806, 813 (Tex. App.ÂTexarkana 2001, no
pet.).Â  In the absence of such a record,
and in the lack of anything that would indicate such completely ineffective
assistance as could be shown without such a record, we must overrule the point
of error.

Â Â Â Â Â Â Â Â Â Â Â  We address
the different allegations of ineffective assistance of counsel.Â  First, we examine the ÂshowupÂ identification
of Black.

Â Â Â Â Â Â Â Â Â Â Â  A ÂshowupÂ
has been defined as a Âpretrial identification procedure in which a suspect is
confronted with a witness to or the victim of a crime.Â  Unlike a lineup, a showup is a one-on-one
confrontation.ÂÂ  BlackÂs Law Dictionary 1506 (9th ed. 2009). Â Identification procedures where a suspect is
viewed singly by a witness have been widely condemned, but due process is not
invariably violated by such a procedure.Â 
Jackson v. State, 657 S.W.2d
123, 127 (Tex. Crim. App. 1983).Â  The question
is, based on the facts of this particular case, whether the totality of
circumstances shows a deprivation of due process.Â  Id.Â  In our analysis, we look to see whether there
was a Âvery substantial likelihoodÂ of misidentification, which would violate
the right to due process and require exclusion of the identification.Â  Id.
(quoting from Neil v. Biggers, 409
U.S. 188, 197 (1972), and Simmons v.
United States, 390 U.S. 377, 384 (1968)).

Â Â Â Â Â Â Â Â Â Â Â  Neil and Jackson set out factors to be considered in assessing the
reliability of the identification procedure.Â 
One of those factors is the opportunity to view the perpetrator.Â  Here, the attendant watched the perpetrator
pump the gas and was nearly run down by the driver as the attendant attempted
to stop the vehicle.Â  Another factor is
the degree of attention.Â  It is
reasonable to conclude that the attendant was paying close attention to the
driver during the Âdrive-offÂ confrontation.Â 
Another factor is the accuracy of the description.Â  No discrepancies in the description of the
perpetrator were shown to exist.Â  Another
factor is the level of certainty of the identification.Â  The attendant was reportedly certain that
Black was the driver, when Black was brought before her.Â  Finally, the length of time between the crime
and the identification is a factor.Â 
Although the time lapse here was not shown precisely, it appears to have
been less than an hour. 

Â Â Â Â Â Â Â Â Â Â Â  Based
on these factors, an attorney could reasonably conclude that it would be
unfruitful to seek to suppress the evidence and thus reasonably choose not to
raise an objection based on the Âshowup.ÂÂ 
The failure to object to admissible evidence does not constitute
ineffective assistance.Â  McFarland v. State, 845 S.W.2d 824, 846
(Tex. Crim. App. 1992).

Â Â Â Â Â Â Â Â Â Â Â  Next, we
address the allegedly illegal arrest.Â 
Black was stopped because his vehicle matched the description of the
vehicle given by the attendant, andÂwith the understandable exception of the
discrepancy between a Â0Â and a ÂDÂ in the numberÂthe license plate matched as
well.Â  That is an adequate reason for a
stop.Â  Plus, the gas tank was full, and
the physical appearance of the driver matched that given by the attendant.Â  Finally, Black was identified as the thief without
hesitation by the attendant.Â  See Tex.
Code Crim. Proc. Ann. art. 14.03(1) Â (Vernon Supp. 2010) (peace officer may arrest
without a warrant a person Âfound in suspicious places and under circumstances
which reasonably show that such persons have been guilty of some . . . breach
of the peaceÂ).Â  In this case, the
vehicle identified as the instrumentality of the theft was a suitably Âsuspicious
place.ÂÂ  Based on these facts, a
detention and subsequent arrest was supportable; and trial counsel could
reasonably find no reason to object to the identification based on those
grounds.

Â Â Â Â Â Â Â Â Â Â Â  Next, we
examine the in-court identification.Â 
Based on the scenario set out above, there would be little chance of
succeeding in an objection to the in-court identification, and counsel could
reasonably choose not to raise an objection that had little chance of success.

Â Â Â Â Â Â Â Â Â Â Â  But was
there objectionable ÂbolsteringÂ testimony?Â 
Black argues that trial counsel should have objected to GrahamÂs
testimony that the attendant identified Black on the spot as being improper
bolstering of the attendantÂs testimony identifying Black as the
miscreant.Â  Bolstering generally refers
to evidence that improperly supports the testimony of an unimpeached witness or
adds credence or weight to prior evidence introduced by the same party.Â  State
v. Balderas, 915 S.W.2d 913, 919 (Tex. App.ÂHouston [1st Dist.] 1996, pet.
refÂd); see Rivas v. State, 275
S.W.3d 880, 886 & n.3 (Tex. Crim. App. 2009).[2]

Â Â Â Â Â Â Â Â Â Â Â  In this
case, it is reasonable to conclude that GrahamÂs testimony did not bolster the
attendantÂs testimony.Â  It provided proof
of when the identification was made, with an indication of the certainty of the
identification at that point in time.Â 
Although it may have added credence to the identification, it also
provided an additional piece of evidence that was helpful in light of the type
of identification procedure used.Â  Thus,
a ÂbolsteringÂ objection could reasonably have been considered fruitless or
could have been insufficient to preserve error.Â 
The decision of counsel not to object on this basis thus has a rational
basis.

Â Â Â Â Â Â Â Â Â Â Â  We
turn, finally, to the audio recording of BlackÂs initial stop by Graham.Â  Black contends his trial counsel should have
objected to the admission of the audio portion of the video made of Black when
he was stopped.Â  His argument on appeal
is that trial counsel should have made a relevancy objection.Â  Approximately seven minutes of the video
consists of BlackÂs unimaginative and repetitive cursing and racial comments
directed at Graham.

Â Â Â Â Â Â Â Â Â Â Â  Relevant
evidence is Âevidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable
than it would be without the evidence.ÂÂ  Tex. R. Evid. 401.Â  Relevant evidence is generally admissible.Â  It is not apparent how this evidence would be
relevant, however.Â  Thus, it may very
well have been objectionable.

Â Â Â Â Â Â Â Â Â Â Â  This record,
however, contains nothing to reveal the reasoning of trial counsel in failing
to object to its admission. Where an appellate record is silent as to why trial
counsel failed to take certain actions, Black has failed to rebut the
presumption that trial counselÂs decision was in some way reasonable.Â  See Mata, 226 S.W.3d at 431.Â  In this case, there is no record at any level
to indicate why counsel chose to take or declined to take any of these actions.

Â Â Â Â Â Â Â Â Â Â Â  We overrule
the sole contention of error and affirm the judgment of the trial court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â  December 15, 2010Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Date Decided:Â Â Â Â Â Â Â Â  December 16, 2010

Â 

Do Not Publish











[1]The
recorded 9-1-1 call had the attendant reporting the truck as being a Toyota Tacoma.Â  Universally, thereafter, the truck was
referred to as a Toyota Tundra. 





[2]The court in Rivas
explained that Â[w]hile the term ÂbolsteringÂ is slowly dying as an
objection on its face, it has not yet expired, despite the fact that the term
itself failed to survive the adoption of the RulesÂ and indicating that
ÂbolsteringÂ has ties to Rule 613(c) of the Texas Rules of Evidence, which
involves prior consistent statements and reiterates principles of hearsay.Â  Tex.
R. Evid. 613(c).Â  Bolstering
occurs when the testimonyÂs sole purpose is to enhance the credibility of a
witness or source of evidence, without substantively contributing Âto make the
existence of [a] fact that is of consequence to the determination of the action
more or less probable than it would be without the evidence.ÂÂ  Some courts have held that a general
ÂbolsteringÂ objection is insufficiently specific to preserve error because it
does not sufficiently inform the trial court of the nature of the
objection.Â  In re J.D., 195 S.W.3d 161, 183 (Tex. App.ÂSan Antonio 2006, no
pet.); Montoya v. State, 43 S.W.3d
568, 573 (Tex. App.ÂWaco 2001, no pet.).

. 

.