Opinion issued June 5, 2008 












 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00413-CR

____________


MATOYA LATREECE SHERMAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from 263rd District Court

Harris County, Texas

Trial Court Cause No. 1050173






MEMORANDUM OPINION


 A jury convicted appellant, Matoya Latreece Sherman, of the offense of theft. 
See Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp. 2007). Appellant elected for the
trial court to assess her punishment, and the court assessed her sentence at two years
imprisonment in a state jail facility, suspended for three years' community
supervision. Appellant did not file a motion for new trial, but filed written notice of
appeal the same day.

 In four points of error, appellant contends that (1) the indictment is insufficient
because it fails to properly allege a continuing scheme or course of conduct for the
purposes of Tex. Pen. Code §31.03, (2) the evidence is legally insufficient because
the State did not prove that the complainant was the owner of the checks, (3)
appellant's trial counsel was ineffective, and (4) the trial court erred by denying
appellant's requested jury instruction on mistake of fact. We affirm.

I. Factual Background

 D.J. was the seventeen-year-old recipient of a monthly children's benefit
payment from the United States Social Security Administration. D.J. lived with her
grandmother, who was the representative payee to whom the Social Security
Administration sent D.J.'s benefits. The benefits consisted of $590 per month to be
used for D.J.'s food and shelter. 

 In July 2005, D.J.'s grandmother received her bank statement and discovered
that checks had been written on her account without her permission. The checks were
dated between June 27, 2005 and July 17, 2005. Appellant's name was listed as the
payee on several of the checks, and appellant had endorsed those checks. D.J.'s
grandmother reported the theft to the bank and executed an affidavit of forgery
swearing under oath that "[D.J.] stole checks from my [check] book." At trial, D.J.'s
grandmother testified that she did not know who took the checks, only that various
people wrote checks on the account. 

 An officer with the Houston Police Department Financial Crimes Unit testified
that the checks on which appellant was listed as payee had been endorsed with
appellant's name and deposited into appellant's bank account. One of the checks had
been cashed by appellant. The check writing resulted in a loss of $2,251.52 from the
account between June 27, 2005 and July 17, 2005.

 Appellant had visited D.J. at her grandmother's home at different times during
2005 and stayed at the house for at least two nights. D.J.'s grandmother testified that
she believed that the series of checks were stolen from her checkbook sometime in
June or July, when appellant had access to the house. She testified that she never told
appellant that she would pay for anything for her, nor did she give appellant or her
granddaughter permission to write checks on her account. 

 Appellant denied having stolen the checks, testifying instead that D.J. had
given her the checks. Appellant admitted endorsing the checks and depositing them
in her account, but denied that any of the writing on the front of the checks was hers. 
She claimed that she had never discussed with D.J. whether the checks were
forgeries. Appellant contended that she would not have deposited the checks had she
known them to be forged. 

 Appellant also testified that she understood D.J. to have her own money
because D.J.'s parents were deceased. Appellant stated that she received none of the
money that was deposited in her account and, if she took it out of the account, she
gave the money to D.J. Appellant testified that she deposited the checks in her
account on D.J.'s behalf because D.J. was not old enough to have a bank account. 
Appellant further claimed that D.J. told her that the money drawn on the checks
belonged to D.J. 

 Finally, D.J. testified that she moved out of her grandmother's house because
her grandmother stopped giving her money after she discovered a love letter from
appellant to D.J. D.J. stated that her grandmother refused to give her money until she
stopped talking to appellant. D.J. claimed that she had given the blank, signed checks
to appellant for appellant to deposit in her account. Appellant was then to return the
funds to D.J. D.J. contended that after she had shown appellant the blank checks and
told appellant that her grandmother signed them, appellant filled out the remainder
of the information, including the amount, and wrote appellant's name as the payee. 
Appellant then endorsed the back of the checks and deposited them in her own
account. D.J. testified she felt justified in taking the checks and writing them on the
account without permission because it was her money.


II. Discussion

A. Defect in Indictment

 

 In her first point of error, appellant claims "the evidence is legally insufficient
to support the conviction for felony theft because the State only proved misdemeanor
theft." Although appellant presents this point as one involving the sufficiency of the
evidence, appellant's argument is actually that the indictment is insufficient to allege
aggregate theft under section 31.03 of the Texas Penal Code because it fails to
properly allege a continuing scheme or course of conduct. In other words, appellant
complains that the offense the State proved at trial, felony aggregate theft, is not the
same offense alleged in the indictment. Appellant does not claim that the evidence
is insufficient to prove a continuing scheme or course of conduct. 

 A person commits theft if he unlawfully appropriates property with intent to
deprive the owner of it without the owner's effective consent. Tex. Pen. Code Ann.
§ 31.03 (Vernon Supp. 2007). When a defendant is charged with committing multiple
thefts over a period of time, the State may choose to aggregate the thefts pursuant to
section 31.09 of the Texas Penal Code, which provides:

 When amounts are obtained in violation of this chapter pursuant to one
scheme or continuing course of conduct, whether from the same or
several sources, the conduct may be considered as one offense and the
amounts aggregated in determining the grade of the offense. 


Id. § 31.09 (Vernon Supp. 2007). 


 If the State chooses to indict a defendant based on section 31.09, the indictment
must include language to the effect that the State is aggregating the amounts pursuant
to a continuing scheme or course of conduct. See Thomason v. State, 892 S.W.2d 8,
11 (Tex. Crim. App. 1994). This language is considered an element of the offense. 
Id. 

 Appellant urges that the indictment in the instant case was insufficient to allege
aggregate theft under section 31.09 because it failed to allege a scheme or continuing
course of conduct. The pertinent portion of the indictment read: Defendant, heretofore on or about June 27, 2005 continuing through
July 19, 2005, did then and there unlawfully appropriate, by acquiring
and otherwise exercising control over property, CASH MONEY owned
by [THE COMPLAINANT], . . . of the value of over one thousand five
hundred dollars and under twenty thousand dollars, with the intent to
deprive the Complainant of the property.


 Significantly, appellant did not declare surprise at the aggregation during trial
or request that the State elect which check it intended to pursue. We note initially
that aggregate theft may be alleged in myriad forms. See Whitehead v. State, 745
S.W.2d 374, 376 (Tex. Crim. App. 1988) (providing multiple means in which
aggregation allegation may be properly made). Although the State's indictment did
not track the language of section 31.09 precisely, after reviewing the record we are
satisfied that it served to place appellant on notice that the State intended to aggregate
the check amounts. 

 Moreover, appellant failed to present to the trial court a motion to quash the
indictment before the date of trial. If a defendant does not object to a defect, error,
or irregularity of form or substance in an indictment before the date on which the trial
commences, she waives the defect for purposes of review on appeal. See Tex. Code
Crim. Proc. Ann. art. 1.14(b) (Vernon 2007). Under these circumstances, we
conclude that appellant failed to object timely to any defects in the indictment. 
Because appellant failed to object timely to any alleged defects in the indictment, any
error is waived. See Tex. R. App. P. 33.1 (a). Finally, even if appellant had preserved
error, a charging instrument is not void merely for omitting an element of the offense. 
Cook v. State, 902 S.W.2d 471, 476-77 (Tex. Crim. App. 1995) (holding that a
charging instrument is not void merely for omitting an element of the offense, despite
being substantively defective, because it sufficiently vested the trial court with
jurisdiction).

 Accordingly, we overrule appellant's first point of error.

B. Sufficiency of the Evidence

 In her second point of error, appellant contends that the evidence is legally
insufficient to support her conviction because the State did not prove that D.J.'s
grandmother was the owner of the Social Security proceeds.

 When examining the legal sufficiency of the evidence, appellate courts view
the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89 (1979)). 
This standard concedes to appellate courts only a limited role. The inquiry does not
require a reviewing court to ask itself whether it believes that the evidence at the trial
established guilt beyond a reasonable doubt. Jackson, 443 U.S. at 318-19, 99 S. Ct.
at 2789. In this regard, the court is not to position itself as a thirteenth juror in
assessing the evidence. Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App.
1992) (stressing that appellate judges are not factfinders); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). Rather, the court is to position itself as a
final, due process safeguard, ensuring only the rationality of the factfinder. Moreno,
755 S.W.2d at 867. 

 The indictment named D.J.'s grandmother as the owner of the property. Hence,
the State was first required to prove beyond a reasonable doubt that D.J.'s
grandmother was the owner of the funds at the time of the alleged misappropriation. 
See Tex. Pen. Code Ann. § 31.03. D.J.'s grandmother was the "owner" if she (1)
had title to the property; (2) had possession of the property, whether lawful or not; or
(3) had a greater right to possession of the property than appellant. See id.
§1.07(a)(35)(A) (Vernon Supp. 2007). "Possession" means actual care, custody,
control, or management. Id. § 1.07(a)(39) (Vernon Supp. 2007).

 Appellant claims, for the first time on appeal, that because the actual check
writing took place after D.J. had moved out of the house, D.J. had the greater right
of possession of the funds at that time. Appellant contends that, at that point, the
Social Security benefits belonged to D.J. and that D.J.'s grandmother was obligated
to make those funds available to her. However, appellant cites no case law in support
of this argument and does not explain why appellant, not D.J., would have had a
greater right of possession to the property than D.J.'s grandmother.

 To the contrary, the undisputed evidence shows that the funds were in the
possession of D.J.'s grandmother during the dates alleged in the indictment. As is
defined under the Penal Code, evidence of possession is sufficient to satisfy
ownership under the statue. See id. § 1.07(a)(35)(A). The record shows that D.J.'s
grandmother exercised care, custody, control, or management of the funds pursuant
to her role as representative payee. D.J. testified that she had shown the blank checks
to appellant with her grandmother's name forged on them before D.J. wrote out the
amount and listed appellant as the payee. D.J. admitted that she did not have her
grandmother's permission to take the checks and to forge them. Appellant admitted
endorsing the checks and depositing them in her account.

 Viewing the evidence in the light most favorable to the verdict, we conclude
that the jury could have reasonably found that D.J.'s grandmother was the owner, as
defined under the Texas Penal Code, of the funds such that appellant's appropriation
of, or exercise of control over, the funds was unlawful. See id. §§ 1.07(a)(35)(A),
31.03. 

 We overrule appellant's second point of error.

C. Ineffective Assistance of Counsel

 In her third point of error, appellant contends that she received ineffective
assistance of counsel at trial. We review claims of ineffective assistance of counsel
under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052 (1984). Under the Strickland test, an appellant must prove that (1) her trial
counsel's representation was deficient and (2) the deficient performance was so
serious that it deprived the appellant of a fair trial. Id. at 687, 104 S. Ct. at 2064. To
establish both prongs, the appellant must prove by a preponderance of the evidence
that counsel's representation fell below the objective standard of prevailing
professional norms and that there is a reasonable probability that, but for counsel's
deficiency, the result of the proceeding would have been different. Id. at 690-94, 104
S. Ct. at 2066-68. An appellant's failure to satisfy one prong makes it unnecessary
for a court to consider the other prong. Id. at 697, 104 S. Ct. at 2069. This test is
applied to claims arising under the Texas Constitution as well as those arising under
the United States Constitution. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986) (en banc).

 When considering the first prong of Strickland, we must decide whether there
is sufficient evidence in the record to refute the strong presumption that trial counsel
rendered adequate assistance and made all decisions in the exercise of reasonable 
professional judgment. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). 
To this end, the Strickland standard requires an appellant to rebut the presumption of
adequate assistance by a preponderance of the evidence. See Hernandez v. State, 988
S.W.2d 770, 772 (Tex. Crim. App. 1999).

 Additionally, to prevail on an ineffectiveness claim, an appellant must not only
state what counsel should have objected to or moved for, but must further show that
the trial court would have erred by denying the request. Mallet v. State, 9 S.W.3d
856, 867 (Tex. App.--Fort Worth 2000, no pet.). Appellant contends that the
indictment did not include appropriate aggregation language and, therefore, that trial
counsel was deficient in failing to file a motion to quash. Appellant also claims her
trial attorney was deficient in failing to move for a directed verdict, failing to move
to require the State to elect the transaction upon which it proceeded, and failing to
object to the jury charge. (1) 

 Our review of defense counsel's performance is highly deferential, beginning
with the strong presumption that the attorney's actions were reasonably professional
and were motivated by sound trial strategy. Jackson v. State, 877 S.W.3d 768, 771
(Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we
will not conclude that defense counsel's assistance was ineffective unless the
challenged conduct was "'so outrageous that no competent attorney would have
engaged in it.'" Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

 Appellant did not give trial counsel the opportunity to explain his decisions
because she did not move for a new trial and request a hearing. In the absence of a
record of counsel's reasoning, we must generally presume that appellant's trial
counsel had a plausible reason for his actions. See Lumpkin v. State, 129 S.W.3d 659,
664 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd). Additionally, there is no
evidence in the record indicating counsel's conduct was "so outrageous that no
competent attorney would have engaged in it." See Goodspeed, 187 S.W.3d 390 at
392. 

 We overrule appellant's third point of error.

D. Mistake of Fact 

 In her fourth point of error, appellant urges that the trial court erred by denying
appellant's request for a "mistake of fact" instruction. Appellant contended that the
evidence raised an issue of mistake of fact with regard to the ownership of the checks
because D.J. reasonably believed she was the owner of the check proceeds and thus,
if D.J. believed that the proceeds belonged to her, appellant was entitled to raise a
mistake-of-fact defense. In discussing the instruction with appellant's trial counsel,
the following colloloqy occurred:

 Appellant's counsel: Your honor, if--if we [are] going to use the
concept of party, I think we then should be
allowed to get a charge on mistake of fact. If
they [are] going to take the position that she's
a party, then if a person believes that they
have a right to something and they are
mistaken, then they are acting upon a mistake
of fact if you [are] going to use the concept of
party.


 Trial court: What says the State?


 Trial prosecutor: Your Honor, if she believes that money is hers, then she wouldn't intentionally and

 knowingly-- 


 Trial court: Excuse me. That is certainly not what we're 
 talking about. The question is whether or not the State has an objection to a mistake of fact.

 

 Trial prosecutor: Yes, your Honor, the State would argue that mistake of fact is not applicable in this case. Not--doesn't apply to the evidence we've heard from the State.

 

 Appellant's counsel: Your Honor, if a person-- 

 

 Trial court: Excuse me. Excuse me, Mr. Carter. Well, that's certainly not what I heard from the testimony. Why don't you get the charge bank
to send me up mistake of fact and review it and
we'll see.

 

 [Recess]

 

 Trial Court: Any objection?

 

 Appellant's Counsel: Your Honor, here's what--what our
contention is, is that the young lady felt that
part of the money was hers.

 

 Trial Court: She's not on trial. I'm talking about your 
 client.

 

 Appellant's Counsel: Well, no. But when they put this party thing in
there it makes it inclusive. They said she did
it along with. If you use the concept for
party--if you want to take that out. Okay. But
as long as say she's a party, then the
assumption that it was somebody else, there is
no other conclusion you can come to if you use
the word party.


 Trial Court: I think this addresses exactly what you asked me.


 Appellant's Counsel: Well, we're taking the position that the young lady
who took the money, Ms.--felt that she had a right to
the money. And it was irrelevant as to whether or not
her grandmother considered because it's my money. 
How do you consent--I don't--you don't have to get
permission to spend your own money from somebody
else.


 Trial Court: The consent aspect is the signature being valid. The
testimony is that the grandmother signed the check and that's what we're referencing here in this particular mistake of fact.

 

 That your client was under the mistake of fact that the grandmother had signed the check, and that's what we're referencing here. Is there a question to whether or not your client really believed that grandma had signed the check or not.


 If the jury believes that the grandmother did sign the check and believed that your client felt that was the case, then she's off the hook. If they don't buy that your client believes that the grandmother signed the check, then she's responsible. That's what we're addressing here.


 Appellant's Counsel: But--but you understand what I am saying.

 

 Trial Court: I understand what you're saying. Although I disagree with the fact whose money it is. It's actually grandmother's money, it's not granddaughter's money. It's grandmother's money to compensate her for the expenses incurred in raising the granddaughter. So to continually classify this as granddaughter's money, I think is a misstatement of the facts. It's grandmother's money.

 

 So either just tell me as to whether or not you want this in there or not.


 Appellant's Counsel: I want this in here because if this is the only thing I can get. But we're talking about whether or not the young lady believes she was entitled to something and she was mistaken. That's what we're saying.


 Trial Court: Well, if she's--well, if she comes to trial, and she should, then I'm concerned whoever represents her will probably ask for something in that regard. But since she's not on trial, your client is, I don't think it's appropriate and I wouldn't provide it.

 

 Anything further?


 Appellant's Counsel: No, your Honor.


 Trial Court: Thank you.


 An instruction regarding mistake of fact was ultimately included in the jury
charge comporting with the trial court's discussion during the charge conference,
namely, whether appellant believed D.J.'s grandmother had signed the checks. The
trial court refused to give appellant's requested instruction, namely, whether D.J.
erroneously believed that the checks belonged to her. The pertinent portion of the
instruction that was actually given read:

 You are instructed that it is a defense to prosecution that a person
through mistake formed a reasonable belief about a matter of fact if her
mistaken belief negated the kind of culpability required for the
commission of the offense.


. . .


 So, if you find from the evidence in this case that at the time the
defendant appropriated by acquiring and otherwise exercising control
over property, namely, cash money owned by the complainant, if she
did, she acted under a mistake of fact, that is, a reasonable belief that the
acquisition and otherwise exercising control over property namely, cash
money owned by the complainant was with the complainant's consent,
or if you have a reasonable doubt thereof, you will acquit the defendant.


 If you find from the evidence beyond a reasonable doubt that at the time
and place in question the defendant did not reasonably believe that the
acquisition and otherwise exercising control over property, namely, cash
money owned by the complainant was with the complainant's consent,
then you must find against the defendant on the issue of mistake of fact.

 We review alleged charge error by first determining whether error existed in
the charge and, if so, analyzing whether sufficient harm resulted from the error to
warrant reversal. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)
(plurality opinion). As a preliminary matter, we must determine whether appellant
preserved error with regard to her requested jury instruction.

 Error relating to a jury charge may be preserved by asserting either an objection
or a requested charge. See Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim. App.
1996); Arana v. State, 1 S.W.3d 824, 826-27 (Tex. App.--Houston [14th Dist.]
1999, pet. ref'd). Both objections and specially requested instructions must be
submitted in writing or dictated to the court reporter before the charge is read to the
jury. Arana, 1 S.W.3d at 826-27; Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15
(Vernon Supp. 1999). 

 In this case, appellant objected to the charge, but did not submit her requested
instructions in writing or dictate those instructions to the court reporter in accordance
with articles 36.14 and 36.15 of the Texas Code of Criminal Procedure. The harm
standard whereby a defendant may obtain reversal by showing egregious harm from
charge errors to which error was not preserved at trial does not apply to a trial court's
failure to submit defensive instructions. Id. at 827. (citing Posey v. State, 966
S.W.2d 57, 60-64 (Tex. Crim. App. 1988) (en banc)). 

 Moreover, even if we were to conclude that the exchange between appellant
and the trial court constituted a proper recitation of a proposed charge for the
purposes of the Texas Code of Criminal Procedure, the requested mistake-of-fact
instruction was not a valid defense. As the State correctly notes, the Texas Penal
Code requires that the mistaken belief be one held by the defendant. Tex. Pen. Code
Ann. § 8.02(a) (Vernon Supp. 2007). The defense impliedly looks to the conduct of
others only to the extent that such conduct contributes to the actor's mistaken belief
and does not look at all to the belief or state of mind of any other person. Johnson
v. State, 734 S.W.2d 199, 203-04 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd)
(holding that when determining the validity of a mistake-of-fact defense, the inquiry
rested exclusively with the mistaken beliefs of appellant). 

 Contrary to this principle, appellant requested the instruction based solely on
a claim that D.J. held a mistaken belief that the funds belonged to her without
contending that appellant acted upon D.J.'s mistake of fact. Appellant claimed that
this was permissible because the State relied on the law of parties to prosecute this
case. Appellant asserts no authority to support this contention. The trial court
properly held that prosecution under the law of parties did not alter the rules
governing a mistake-of-fact defense. Appellant was not entitled under the facts or the
law to an instruction about any potential mistaken belief another party might have
possessed without showing how it contributed to appellant's state of mind. See id.
at 203-04. Therefore, the trial court did not err by denying appellant's request.

 We overrule appellant's fourth point of error.


III. Conclusion


 We affirm the judgment of the trial court.

 


 Bea Ann Smith

 Justice


Panel consists of Justices Keyes, Alcala, and Smith. (2)

Do not publish. See Tex. R. App. P. 47.2(b).
1. Appellant's brief does not explain why trial counsel's alleged failure to object to the
jury charge constitutes ineffective assistance of counsel. Therefore, we hold that this
point is inadequately briefed and presents nothing for our review. See Rocha v. State,
16 S.W.3d 1, 20 (Tex. Crim. App. 2000). See discussion infra Part II.C.
2. The Honorable Bea Ann Smith, retired Justice, Fifth Court of Appeals, participating
by assignment.