In The 



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-08-00254-CR


NO. 09-08-00255-CR


 _____________________



DON COLLIS HOUSTON, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause Nos. CR25519 and CR26571






OPINION


 Don Collis Houston, Jr. pled guilty on separate indictments for possession of a
controlled substance and bail jumping. On appeal, Houston challenges the trial court's ruling
on his motion to suppress evidence obtained in a search of the motor vehicle. The driver of
the vehicle consented to the search, and Houston did not object to the search. We hold the
search of the vehicle did not violate Houston's rights, and Houston failed to preserve his
challenge to the indictment for bail jumping. Accordingly, we affirm the judgments. 

 The State indicted Houston in Cause No. CR25519 for possession of a controlled
substance, cocaine, in the amount of four grams or more but less than two hundred grams. 
See Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003). Houston filed a
motion to suppress, on the grounds that any consent to search his property "was not freely
given and was no more than acquiescence to a claim of lawful authority." In denying the
motion to suppress, the trial court made findings of fact, as follows: (1) Houston was a
passenger in a motor vehicle driven by S.M. (1); (2) Houston allowed S.M. to operate and
control the vehicle; (3) the motor vehicle was stopped for the traffic violation of speeding;
(4) S.M. gave verbal consent to search the vehicle; (5) Houston was present during the search
of the motor vehicle but neither objected to the search nor refused to give consent to the
search. The trial court concluded that S.M. had authority to consent, that she properly
consented, and that contraband was found during the search of the vehicle. 

 We review a trial court's suppression ruling under an abuse of discretion standard. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We accord almost total
deference to the trial court's determination of historical facts, especially when those
determinations turn on witnesses' credibility or demeanor, but review de novo the trial
court's application of law to facts not turning on credibility or demeanor. Neal v. State, 256
S.W.3d 264, 281 (Tex. Crim. App. 2008), cert. denied, 129 S.Ct. 1037 (2009). 

 The Fourth Amendment protects individuals against unreasonable searches and
seizures. U.S. Const. amend. IV. A search conducted pursuant to a valid consent meets a
specifically established exception to the requirement of both a warrant and probable cause. 
Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The
validity of an alleged consent to search is a fact question determined from consideration of
all the circumstances. Ohio v. Robinette, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347
(1996). While the federal constitution requires that voluntariness of consent be proved by
a preponderance of the evidence, the Texas Constitution requires that voluntariness be shown
by clear and convincing evidence. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim.
App. 2000). 

 To establish the reasonableness of a search, the State "is not limited to proof that
consent was given by the defendant, but may show that permission to search was obtained
from a third party who possessed common authority over or other sufficient relationship to
the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171,
94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The voluntary consent of a third party to a search of
property under joint control is valid against the defendant. Id. at 169. The search may be
valid even though the third party lacked actual authority to consent, provided the officer
reasonably believed the person had authority to consent. Illinois v. Rodriguez, 497 U.S. 177,
186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The issue is "whether the right to be free of
unreasonable searches has been violated." Id. at 187. 

 A consent to search satisfies the Fourth Amendment so long as "the consent was in
fact voluntarily given, and not the result of duress or coercion, express or implied." 
Schneckloth v. Bustamonte, 412 U.S. at 248. The totality of the surrounding circumstances
must be considered in determining the voluntariness of the consent given in a particular case. 
Id. at 226. Whether consent to a search was in fact voluntary or was the product of duress
or coercion, express or implied, is a question of fact. Id. at 227. 

 Voluntary consent given by a third party is not valid as to the defendant if the
defendant is also present and expressly refuses to consent. See Georgia v. Randolph, 547
U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("We therefore hold that a
warrantless search of a shared dwelling for evidence over the express refusal of consent by
a physically present resident cannot be justified as reasonable as to him on the basis of
consent given to the police by another resident."). But police are not required to seek out
potentially objecting co-tenants. Id. at 122. Noting that the defendant in Matlock was not
presented with the opportunity to object but was in a squad car not far away, the court in
Georgia v. Randolph admitted it was "drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not
suffice for a reasonable search, whereas the potential objector, nearby but not invited to take
part in the threshold colloquy, loses out." Id. at 121. The Court remarked that "the
formalism is justified" because "[s]o long as there is no evidence that the police have
removed the potentially objecting tenant from the entrance for the sake of avoiding a possible
objection, there is practical value in the simple clarity of complementary rules, one
recognizing the co-tenant's permission when there is no fellow occupant on hand, the other
according dispositive weight to the fellow occupant's contrary indication when he expresses
it." Id. at 121-22. 

 On appeal, Houston argues S.M.'s consent was invalid because he possesses a right
of privacy in the vehicle that is superior to S.M.'s right of possession. (2) The vehicle is
registered to Houston's father. Houston testified that he has been driving the vehicle for
about four years. During the suppression hearing, Houston admitted that S.M. had authority
to drive the vehicle, and that she had his permission to operate the vehicle and to exercise
control and management over it. See Maxwell v. State, 73 S.W.3d 278, 282 (Tex. Crim. App.
2002). In Maxwell, the defendant owned a tractor-trailer rig and employed a driver who was
operating the vehicle at the time of the stop. Id. at 280. Although he knew the passenger
owned the rig, the officer asked only the employee driver for consent to search. Id. Noting
that common authority arises not from ownership but from the mutual use of the property,
the Court of Criminal Appeals held the consent was valid. Id. at 281-82. As the authorized
operator of the vehicle at the time of the detention, S.M. could consent to its search. See id. 
 Although Houston claims the officer "was told, unambiguously, that she could not
give permission to search the automobile because the automobile belonged to the
Defendant[,]" we find no testimony in the record of the hearing that S.M. told the officer that
the vehicle belonged to her passenger, Houston. While that may be a possible inference, the
evidence establishes only that she informed the officer the vehicle did not belong to her. 
S.M. did not testify at the hearing. The officer testified that S.M. gave verbal consent to a
search of the vehicle, as follows:

 Q. [by the Prosecutor] And then you asked for the consent?

 A. Yes, ma'am, I did.

 Q. And would you tell us again what it is she said?

 A. She--she said that "It's not my vehicle, I can't give you consent."

 Q. What, if anything, did you say to her?

 A. I told [S.M.] that she was in care, custody and control of the vehicle
and that she was driving. She said, "You can search it."

 Q. Okay. How soon after did you explain to her that she was
exercising care, custody and control that she could give consent and then she
say, "Okay, you can search"?

 A. It was a matter of seconds, two seconds.


 Houston argues S.M.'s consent is invalid. He suggests S.M. merely acquiesced to
what she thought was the officer's lawful authority. Consent must be positive and
unequivocal, and there must not be any duress or coercion. Carmouche v. State, 10 S.W.3d
at 331 (citing Schneckloth, 412 U.S. at 228). In Carmouche, the defendant submitted to a
second pat-down while closely surrounded by four officers and after being told to turn
around and put his hands on the car. 10 S.W.3d at 332. The defendant was only asked if he
could be searched again after he complied with the order to turn around and put his hands on
the car. Id. The Court held that under the circumstances a reasonable person could conclude
that the second search, like the first Terry frisk, was not optional. Id. at 333. Houston
implies that telling S.M. that she was in control of the vehicle was coercive. This is not a
situation, as was the case in Bumper, when an officer falsely represents that he already has
a search warrant. See Bumper v. North Carolina, 391 U.S. 543, 548, 87 S.Ct. 1788, 20 L.Ed.
2d 797 (1968). Nor does this case bear any resemblance to Carmouche, in which a prior,
non-consensual Terry frisk preceded a request made under intimidating circumstances and
a substantial exercise of authority. See Carmouche, 10 S.W.3d at 332. By all appearances,
this was a routine traffic stop. The officer asked S.M. to exit the vehicle. The officer did not
draw his weapon. She was not handcuffed and was not under arrest at this time. The officer
did not frisk S.M. before asking if she would consent to a search. The officer asked for
consent only once. The statement to S.M., to the effect that she could consent to a search of
the vehicle, was not false. 

 Houston analogizes S.M.'s statement that she did not own the vehicle to the
invocation of the right to counsel. Schneckloth distinguished between the rights protected
by the Fourth Amendment and the Sixth Amendment. Schneckloth, 412 U.S. at 236. A
waiver of Sixth Amendment rights requires an intentional relinquishment of a known right
or privilege as a safeguard of the process that guarantees a defendant a fair trial. Id. at 236-37. The Supreme Court recognized "a vast difference between those rights that protect a fair
criminal trial and the rights guaranteed under the Fourth Amendment." Id. at. 241. Fourth
Amendment rights protect privacy. Id. The situation in this case is not analogous to the
invocation of the right to counsel. The trial court's findings that S.M. had authority and
voluntarily consented to a search are supported by the evidence.

 Houston suggests that once the officer learned S.M. did not own the vehicle the
officer was obliged to ask Houston for permission to search. It is mutual use, not ownership,
that gives rise to common authority to consent to a search. See Maxwell, 73 S.W.3d at 281-82; see also Welch v. State, 93 S.W.3d 50, 54 (Tex. Crim. App. 2002). Houston shared a
mutual use of the vehicle with S.M. The car is registered in his father's name. 

 The officer testified that he did not ask Houston to consent to a search. He described
the relative physical positions of the parties, as follows:

 Q. Okay. Now, during this conversation where you were asking for the
consent, where was Mr. Houston?

 A. Mr. Houston is still inside the vehicle in the right front passenger
seat.

 Q. And where are you and [S.M]?

 A. We are in between my patrol car and her--the vehicle.


 After obtaining consent to search from S.M., the officer went to the vehicle and
informed Houston that S.M. had consented to a search, and instructed Houston to exit the
vehicle and stand in the grassy ditch 12 to 15 feet from the car while the search was
conducted. At the time, Houston was not under arrest and was not handcuffed. Houston did
not expressly refuse to consent to the search, and never told the officer at any time not to
search the vehicle.

 Reasonableness does not require police to take affirmative steps to find a potential
objector before acting on the consent they have received. Georgia v. Randolph, 547 U.S. at
122. The trial court could reasonably conclude that Houston was not removed for the
purpose of avoiding a possible objection. See id. at 121. Houston was in the car when S.M.
provided consent, the officer informed Houston that S.M. had given consent, and Houston
was unrestrained during the search. Like Matlock, Houston was nearby while the search
proceeded. See United States v. Matlock, 415 U.S. at 166. As a passenger in the vehicle,
Houston had standing to contest the search and a reasonable expectation of privacy. Brendlin
v. California, 551 U.S. 249, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007); Parker v. State,
182 S.W.3d 923, 927 (Tex. Crim. App. 2006). Houston was present when the search was
conducted. The trial court followed the guidelines established in Maxwell and Matlock. See
United States v. Matlock, 415 U.S. at 169-71; Maxwell v. State, 73 S.W.3d at 282. The
record supports the finding of an undisputed consent to search. Because the consent was not
disputed by Houston when the search occurred, the search did not violate the Fourth
Amendment. See Georgia v. Randolph, 547 U.S. at 122. Issue one is overruled.

 In his opening brief, Houston argued in issue two that the record contained legally or
factually insufficient evidence to support the convictions. Houston withdrew the issue in his
reply brief, but the State suggests counsel for the appellant represented in the opening brief
that certain events had not occurred in the proceedings below when he knew the true facts
to be otherwise. The brief for the appellant stated "[a]s remarkable as it may seem, the State
never introduced the Defendant's judicial confession, written waiver of rights, the
Presentence Investigation and/or stipulations of evidence into evidence and the trial court did
not admit same in the above-referenced cause numbers." As was established through the
filing of supplemental records, this statement is incorrect. 

 Counsel for a party, through briefs and in any oral submission, is expected to provide
the Court a fair and accurate understanding of the facts and the applicable law, and must not
misrepresent, mischaracterize, misquote or miscite the facts or the law. The Court has
inherent power to enforce compliance with the rules, and take appropriate action. 
Considering that the issue was withdrawn, and after examining the briefs, the record before
the Court, and the procedural history in this case, the Court will not proceed further on issue
two. 

 Houston added an additional issue in his reply brief. The reply brief contends for the
first time that the indictment in the bail jumping case does not charge Houston with the
commission of an offense. Generally, the purpose of a reply brief is to address "any matter
in the appellee's brief." Tex. R. App. P. 38.3. The State did not discuss the validity of the
indictment in its brief; inclusion of an argument concerning this new issue not addressed in
either appellant's or appellee's brief would generally be inappropriate for a reply brief. See
Barrios v. State, 27 S.W.3d 313, 322 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd).

 Houston asks this Court to address the issue as a supplement to his brief. See Tex. R.
App. P. 38.7. A brief may be amended or supplemented with the court's permission 
"whenever justice requires, on whatever reasonable terms the court may prescribe." Id. 
Houston contends he should be allowed to supplement his brief "due [to] the fact that new
case law on the matter has just been released." See Garza v. State, 269 S.W.3d 300 (Tex.
App.--Amarillo 2008, pet. granted). 

 "[B]riefs are meant to acquaint the court with the issues in a case and to present
argument that will enable the court to decide the case[.]" Tex. R. App. P. 38.9. We construe
the briefing rules liberally to allow the issue to be presented as an amendment to the
appellant's brief. It is not necessary to postpone submission or require additional briefing,
however. See id. The law is well-settled. 

 Houston did not file a motion to quash the indictment, as required to preserve errors
of either form or substance in an indictment. See Studer v. State, 799 S.W.2d 263, 271 (Tex.
Crim. App. 1990). Houston argues the instrument is not an indictment because "[t]he
Indictment fails to state the terms of release the Defendant is alleged to have violated[.]" He
contends "he essentially pled guilty to no crime and ... there is no evidence to sustain the
conviction in Cause No. CR-26571." Houston suggests the omission of the terms of release
on the bail bond in the indictment means he confessed to an act that is not a crime.

 An indictment serves two functions: (1) to provide notice of the offense in order to
allow a defendant to prepare a defense; and (2) to vest jurisdiction in the trial court. See
Cook v. State, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995). Defects in an indictment, even
substantive ones, do not deprive the trial court of jurisdiction. Id. at 476. To comprise an
indictment, an instrument must charge a person with the commission of an offense. Id. at
477. In Cook, the name of the accused was omitted from the indictment and so completely
failed to charge a person. Id. at 480. However, "a substantively defective indictment is
sufficient to vest the trial court with jurisdiction." Id. at 477. An instrument qualifies as an
indictment if it "include[s] one or more allegations necessary to give notice of the statutory
offense with which the defendant was charged." Duron v. State, 956 S.W.2d 547, 551 (Tex.
Crim. App. 1997). 

 In this case, the indictment alleges that on or about September 5, 2006, "Don Collis
Houston, Jr. did then and there, after being lawfully released from custody on a pending
felony charge on condition that he subsequently appear in court, intentionally or knowingly
fail to appear in accordance with the terms of his release[.]" The indictment both charged a
person (Don Collis Houston, Jr.) and identified the statutory offense with which Houston was
charged (Penal Code Section 38.10). See Tex. Pen. Code Ann. § 38.10 (a), (f) (Vernon
2003) ("A person lawfully released from custody, with or without bail, on condition that he
subsequently appear commits an offense if he intentionally or knowingly fails to appear in
accordance with the terms of his release." "An offense under this section is a felony of the
third degree if the offense for which the actor's appearance was required is classified as a
felony."). The indictment charged Houston with the commission of an offense.

 The case relied on by Houston did not change this well-settled caselaw regarding
waiver of error in an indictment. In Garza, the defendant waived indictment, agreed to
proceed by information, and stipulated to having caused serious bodily injury to the
complainant. 269 S.W.3d at 301. After the trial court revoked community supervision, the
defendant appealed on the grounds that there was no evidence that he committed aggravated
assault. Id. at 300-01. The appellate court rejected the issues raised on appeal, but reversed
the judgment and remanded the case to the trial court because the information did not include
the word "serious." Id. at 301. Holding that the information alleged the misdemeanor
offense of simple assault, the appellate court remanded for a determination of trial court
jurisdiction. Id. at 302. The appellate court reasoned that either the trial court convicted the
defendant for a crime other than and greater than that contained in the charging instrument
or the trial court imposed a sentence greater than that allowed by law for committing a
misdemeanor offense. Id. 

 The proceedings in Houston's case do not implicate the concerns addressed by the
intermediate appellate court in Garza. See id. Regardless of the terms of his release, Houston
judicially admitted that he was released from custody on a pending felony charge on
condition that he subsequently appear in court and that he intentionally or knowingly failed
to appear in accordance with the terms of his release. Houston cannot argue that he was
charged with and judicially confessed to conduct that is a misdemeanor. Here, the indictment
specifically alleged Houston had been released on a pending felony charge. Moreover, the
indictment's return to a felony court put Houston on notice that the charging of a felony was
intended. See Kirkpatrick v. State, No. P.D.-0873-07, P.D.-0874-07, at *5 (Tex. Crim. App.
Mar. 18, 2009). If he had a question about the allegations of the felony offense he was being
charged with, Houston should have objected to the indictment. Id. 

 Furthermore, Houston judicially confessed to having committed the offense charged
in the indictment. The judicial confession states "I have read the charging instrument and
my attorney has explained it to me and I committed each and every element alleged. I swear,
under oath, that I am guilty of the offense set out therein. . . ." Having stipulated to
committing a felony offense under Penal Code Section 38.10, he cannot challenge the State's
proof of the offense. See Bryant v. State, 187 S.W.3d 397, 401 (Tex. Crim. App. 2005)
(holding a defendant may not challenge the sufficiency of the evidence on an element to
which he stipulated); Dinnery v. State, 592 S.W.2d 343, 353 (Tex. Crim. App. 1980) (op. on
reh'g) ("It is well settled that a judicial confession, standing alone, is sufficient to sustain a
conviction upon a guilty plea, ... and to satisfy the requirements of Article 1.15. . ."). The
issue is overruled. 

 We affirm the judgments.

 AFFIRMED.

 _________________________________

 DAVID GAULTNEY

 Justice 


Submitted on February 19, 2009.

Opinion Delivered May 27, 2009

Publish


Before Gaultney, Kreger, and Horton, JJ.

Concurring Opinion

 I concur with the court's opinion to affirm the trial court's judgment. However, I
disagree with the decision to not further address defense counsel's false statements to this
Court regarding the trial court proceedings. 

 The record before us reflects that defendant's counsel, Joseph R. Willie II, filed a brief
in this Court in which he argued that there was legally and factually insufficient evidence to
support his client's two convictions because: "[a]s remarkable as it may seem, the State
never introduced the Defendant's judicial confession, written waiver of rights, the
Presentence Investigation and/or stipulations of evidence and the trial court did not admit
same in the above-referenced cause numbers." In his brief, Defendant's counsel requested
that we reverse and acquit his client in these two cases as a result of the State's failure to
introduce evidence. 

 The State's attorney then caused the record to be supplemented with additional items
not contained in the record originally filed with this Court. Afterward, the State's attorney
filed a brief and responded to Houston's legal and factual sufficiency argument by stating:
"This is an unmitigated and blatant lie on the part of Appellant's counsel and in fact
Appellant's judicial confessions were indeed introduced into evidence in the presence of
Appellant's counsel." 

 Subsequently, in his reply brief, Houston withdrew the issue. The supplemented
record further demonstrates that Mr. Willie was Houston's attorney in the trial court and that
he was present when the State introduced Houston's judicial confessions into evidence. In
his response to the State's request to supplement the record, Mr. Willie stated that he "was
never made aware that such a record existed."

 From the state of the record, it is reasonable to infer that Mr. Willie, believing that a
record of the guilty plea proceeding did not exist, represented to this court a false fact
concerning the State's alleged failure to introduce his client's judicial confession and only
decided to recant when faced with a record showing what had actually occurred. While Mr.
Willie's withdrawal of the issue might be grounds to mitigate his misrepresentation, I
disagree that withdrawing the issue alone warrants no further proceedings.

 Lawyer's "should demonstrate respect for the legal system and for those who serve
it, including judges, other lawyers and public officials." Tex. Disciplinary R. Prof'l
Conduct preamble ¶ 4, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon
2005). Rule 3.03 of the Rules of Professional Conduct require that a lawyer not "knowingly
make a false statement of material fact or law to a tribunal." Tex. Disciplinary R. Prof'l
Conduct 3.03(a)(1). In my opinion, further proceedings are warranted to determine whether
Mr. Willie made misrepresentations to the court knowingly. I disagree with the court's
conclusion that as a court we will not proceed further on the issue.


 __________________________________

 HOLLIS HORTON

 Justice


Concurrence Delivered

May 27, 2009 

 
1. At the time of the arrest Houston and S.M. were engaged to marry. At the hearing,
Houston referred to S.M. as his ex-wife.
2. Houston urges his conviction for possession of a controlled substance must be
reversed and an acquittal ordered because the search of his vehicle was not legally conducted. 
We note that evidentiary insufficiency to support a guilty plea is trial error that does not
result in acquittal. Bender v. State, 758 S.W.2d 278, 281 (Tex. Crim. App. 1988). Similarly,
a defendant who prevails on a motion to suppress is not automatically entitled to an acquittal. 
State v. Huddleston, 164 S.W.3d 711, 717 (Tex. App.--Austin 2005, no pet.). If appellant
prevailed on appeal, the result would be a remand to the trial court.